Tilghman, C. J.
This is an action on the case, brought by Robert E. Griffith against Thomas Ingledew, owner of the ship Hope, foi negligence 'in the carriage of a quantity of copper shipped at Liverpool, by A. T. Patterson, to be delivered at the port of Philadelphia, to the plaintiff or his assigns. Although, by the bills of lading signed by Joseph Hall, the master of the ship, the copper was to be delivered to the plaintiff, yet it appeared by the invoice that it was shipped on the account of Patterson. The defendant’s counsel contended, therefore, on the trial, that the action should have been brought by Patterson, and could not be maintained by the plaintiff. A verdict was taken for the plaintiff, the point, whether the action could be supported in the name of the -plaintiff, being reserved for the consideration of the Court. It is merely a technical objection, having no bearing on the merits of the case. There is no opposition of interest between Patterson and the plaintiff. It is immaterial to the defendant to whom the damages are paid ; and if the plaintiff recovers, he is accountable to Patterson for the sum recover *431 ed. Nevertheless, if the action is brought in the wrong name, the defendant has a right to avail himself of this defect, and the Court is bound to protect him. It is somewhat singular, that at this time of day it should be matter of doubt in whose name a suit of this kind should be brought; yet it must be confessed, that it is a subject not void of difficulty. Two questions are to be considered : 1st. Was the legal property of the goods vested in the plaintiff? 2d. If it was, can he support the action ?
1st. I think it will be found, upon a review of the decisions on this subject, that the legal property was vested in the plaintiff, although, no doubt, he held in trust for Patterson, the shipper. In deciding on the legal property, the Court will look to the face of the bill of lading \ but in ascertaining the equitable owner, the invoices, letters of advice, and other collateral evidence, will be resorted to. So it was 'expressly determined in Evans v. Martlett,(A. D. 1697) re-, ported in 1 Ld. Raym. 271. and 12 Mod. 156. There the goods were shipped by A, and consigned, by the bill of lading, to B, although it appeared by the invoice that the shipment was on account of A. The rule laid down by the Court was, “that if goods are, by bill of lading, consigned to A, he is the owner, and must bring the action against the owner of the ship if they be lost; but if the bill be special, to be delivered to A for the use of B, B ought to bring the action ; but if the bill be general to A, and the invoice shews they are on account of B, A ought to bring the action, for the property is in him, and B has only a trust/’ It is proper to take notice, that prior to this case, a question had arisen in Chancery, in the year 1690, between the consignor of goods and the consignee, who had not paid for them. (Wiseman v. Vandeputt, 2 Vern. 203.) The Chancellor referred it to a Court of law to decide, who was the legal owner. It was decided at law in favour of the consignee, and then the Chancellor determined that the equitable property was in the consignor. I do not know that the decision in Evans v. Martlett, has ever been questioned, so far as concerns the right of the consignee to support an action, in cases where no third person has claimed by virtue of an indorsement of the bill of lading. But where the consignee who has not paid for the goods, has indorsed the bill of lading for a valuable consideration, to an innocent person who had no notice of any better title, it has been vfry *432 warmly disputed whether that indorsee could hold the goods against the consignor. That was the case of Lickbarrow v. Mason, in which the Court of King’s Bench decided in favour the indorsee. That decision was reversed in the Exchequer chamber; but the judgment in the Exchequer was reversed, and that of the King’s Bench finally affirmed in the House of Lords. In the memorable argument of Judge Buller in the House of Lords, he says, “ it has been asserted that no case has yet decided, that a bill of lading does transfer the property. But, in answer to that, it is to be obsei v.-d, that all the cases upon the subject, Evans v. Martlett:, Wright v. Campbell, and Caldwell v. Ball, and the common understanding of mankind, preclude that question.” Buller also said, “ that in the case of Wright v. Campbell, Lord Mansfield declared, that since the case of Evans v. Martlett, it had always been held, that the delivery of a bill of lading transferred the property at law” And it is very remarkable, that even Lord Loughborough, who delivered the opinion of the Court of Exchequer chamber, in Lickbarrow v. Mason, expressly conceded, “ that the case of Evans v. Martlett was well determined on the principal point, that the consignee might support an action for the goods, because-he had either a special property, or a right of action on the contract.” After all these decisions, it would seem strange that there should be any doubt of the efficacy of the bill of lading in passing the legal property-to the consignee. But the counsel for the defendant rely with great confidence on the opinion of Lord Ellenborough and the Court of King’s Bench, in the case of Waring v. Cox, 1 Camp. 364, and Coxe v. Harden, 4 East. 216. The point of these cases appears to be, that where, by the bill of lading, the goods are deliverable to the order of the shipper, and the shipper indorses to another without -value, such indorsement does not vest the legal property in the indorsee, but only gives him a right to receive the goods as agent of the shipper. It is to be observed, that in these cases the goods were deliverable to the order of the shipper, and, in that respect, they differ from Evans v. Martlett., where they were deliverable to the consignee who was named in the bill. Unless that distinction be taken, the cases of Waring v. Cox, and Coxe v. Harden, are not to be reconciled to those which preceded them ; but with that distinction, the cases are not contradictory. I am inclined to think, *433 that Lord Ellenborough distinguished between bills of lading where the consignee was named and those in which the goods were deliverable to order, because he denies that the bills of lading are like bills of exchange, in which the property passes by indorsement. “ No decision, (says he, in the case of Coxe v. Harden,) of a Court of law, on the subject of bills of lading, has gone farther than to say, than the assignment of a bill of lading by the consignee, for a valuable consideration, and without notice by the party taking it, of a better title, passes the property in the goods thereby assigned.” Now if that position be confined to the assignee oí a bill of lading, it may be true; but the learned Judge would never have ventured to assert, in the face of Evans v. Martlett, that no Court of law had decided that the bill of lading vested the property in the person to whom, by the tenor of the bill, the goods were deliverable. And I observe that Lawes, in his Treatise on Charter Parties, p. 376, 377, first lays down the law exactly as it was ruled in Evans v. Martlett, which, he says, has been recognised and acted upon in all the subsequent cases, and then proceeds to the cases of assignees of bills of lading, decided by Lord Ellenborough at Nisi Prius, and by the Court of King’s Bench, as before mentioned. Upon the whole, then, I think it may safely be affirmed, that between the parties to this suit, it cannot be denied that the legal property was vested in the plaintiff. But can the plaintiff support an action in his own name ? That is the second point.
2d. It is objected that there is no privity of contract, between the ship-owner and the consignee, and that in the present instance, the freight being paid by the shipper, there is a want of consideration to support a promise to the consignee. It is not expressed in the bill of lading by whom the freight is to be paid, but only that it is tobe paid at Liverpool. I presume, however, it was not demandable before the goods w^ere delivered at Philadelphia. It is unnecessary to dbcide, whether the ship-owner could have supported an action for the freight.against the plaintiff, or whether the shipper, (Mr. Patterson,J who paid the freight, might have maintained an action in his own name for the negligent carriage of the goods. The question is, whether the consignee may not support an action ? And for the purpose of this argument, it is to be assumed that the consignee is, the owner of the goods, without *434 taking the equitable title into consideration. It is nothing to the defendant who kremitled in equity, since no conflicting equitable claim has been brought forward; but this action is, *n truth, .for the benefit of the equitable owner. The question, then, is reduced to a single point; If one man, in consideration of value received from another, promises to do a thing for the benefit of a third, Can that third person support an action i And that he can, was long ago decided in the case of Dutton and wife v. Pool, T. Ray, 302. Hornsey v. Dimocke, 1 Vent. 119. Bell v. Chaplain, Hardr. 321, and Starkey v. Mill, Style, 296. In Starkey v. Mill, the father gave goods to his son, in -consideration that he should pay the plaintiff ten pounds;-and Rolle,' C. J. said, there was a plain contract, because the goods were given for the benefit of the plaintiff, though the contract be not between him and the defendant, and he may well have an action upon the case, for here is a promise in law made to the plaintiff, though there be not a promise in fact. So in the case before us, a promise in law may be said to have been made to the plaintiff, that the goods should be carried safely. Indeed, it might almost be said that a promise in fact was made to the plaintiff, for the bill of lading does not expressly make a promise to any body. It runs thus : “ Shipped by A. T. Patterson, to be delivered • to Robert E. Griffith, or his assigns, at Philadelphia.” It would be doing no violence to the instrument, to construe it as a promise made to the plaintiff; and such a promise would clearly be obligatory, though the consideration moved from a third person. I observed before, that Lord Loughborough, who denied that the general property passed to the consignee, was yet of opinion, he might maintain an action, either-by virtue of the special property in him, or on the contract. In actions against carriers on the custom of the country, the general principle is, that the right of action is attached to the property. If A sells goods to B, and delivers them to a carrier by order of B, the right of action against the carrier is in B, because the delivery to the carrier vests the property completely in B. So the delivery of the bill of lading vests the property in the consignee. As to privity, according to the reasoning of Rolle, in Starkey v. Mill, there is no want of it, for there being a promise inlaw to the plaintiff, he must be privy to that promise, being the person to whom it was made.
*435 Upon the whole, I am of opinion, that, by virtue of the bill of lading, sufficient property for the support of this action was vested in the plaintiff, and, therefore, judgment should be entered on the verdict.
Gsbson, J.
It is important to ascertain with precision, the situation in which the plaintiff stood in relation both to the contract and the goods which were the subject of it. The goods were not delivered to the carrier in pursuance of a previous purchase, or order of the consignee ; for they had been purchased the very day before by the consignor, who shipped them on his own account and risk, and paid the freight. From one of the consignor’s letters, may fairly be inferred an authority to the consignee, to liquidate, with the proceeds, a balance arising from former transactions, which the consignor thought (and justly, as appears by the subsequent settlement,) might be against him, and to place the surplus to the consignor’s credit. This, however, gave no interest in the goods themselves ; but only an authority to direct the application of the proceeds. I reject the account settled with the consignor’s agent, and introduced here as the foundation of a lien, because it was stated long after the transaction in question, and even after the commencement of the suit: for if it were competent, as I think it was, to shew indebtedness per se, and not as an acknowledgment of the party, the consequent right of lien would arise too late to vest, at the period material to the question, any other property than what the bill of lading might confer. But lien is out of the question j both because the general balance does not appear to have grown out of transactions between the parties as merchant and factor ; and because it never attaches before actual possession of the subject matter, and cannot, therefore, affect responsibilities which were fixed at the time of the shipment, and not subject to shift on the delivery of the goods, or the happening of any contingency whatever. We have, then, the case of a plaintiff who was a consignee not liable for freight; ' who had not ordered the goods to be delivéred to any carrier ; who was not bound to stand to the risk of transportation ; between whom and the consignor there was, as tp this transaction, no sort of privity or previous negotiation s and who had no beneficial interest in the goods, nor any kind of. property but what the bill of lading might give. Now I will not stop to inquire, whether the bill of lading did not vest the legal *436 interest even before the goods came to hand ; but I will admjt, (at least for the sake of the argument,) that it did; that passeci t|le legal title, and that the consignee might have maintained trover or any action founded on property. But, it is to be remembered, the action here is not founded on property, but contract, and that, therefore, an interest in the property, which does not, (if it ever necessarily does,) draw after it an interest in the contract, will be insufficient. Before examining the case on general principles applicable to all actions of assumpsit, I will advert to the authorities where the action was avowedly founded on the contract, and see whetherdt has, in any case so naked in circumstances as this, been sustained in the name of the consignee. These authorities assert no governing principle ; nor do they point out any circumstance or feature as an invariable criterion of the relative liability of the parties ; but in each, the decision was founded on some circumstance, which is either wantinginthe case before us, or found operating against the right of the plaintiff. The first case is Davis & Jordan v. James, 5 Burr, 2680, which is exactly the case at 'bar, except that the consignor, instead of having actually paid the price of transportation, had only agreed to pay it: (a differential circumstance which certainly does not strengthen the case) and there the consignor was held to be the proper person to sue, although it seems to have been taken for granted, and it was relied on by the defendant’s counsel, that the property had been changed by the delivery to the carrier, and had stood at the risk of the consignee. Yet Lord Mans-field held the right of action to be in the consignor, because he had agreed to pay the carriage; thus expressly discarding the right of property as immaterial, and resting the matter altogether on the agreement; which, from the circumstance of the price of carriage being payable by the consignor, seems to have been considered as made with him exclusively on his own account, and not as an agtnt of the consignee. This case, which, as the Court proceeded on an admission that the whole property, both legal and beneficial, was vested in the consignee, is, therefore, infinitely stronger than ours, will, I think, be found in the sequel, to rest on the soundest principles of legal reason. The next case is Moore and others v. Wilson, 1 Term Rep. 659, and in this, also, the consignor was held to have the right of action, although the vendor had agreed with the vendee to pay the carriage; Mr. Justice Buller, saying *437 that whatever might be the contract between the vendor and the vendee, the agreement for the carriage of the goods >was between the carrier and the former, who was by law alone liable. It is unnecessary to insist on the authority of this case further than as it proves the general principle, that where the consignor contracts for himself, although the property may be, as it undoubtedly was in this instance, changed by the delivery to the carrier, he may sue in his own right: although it must still be admitted, the agreement between the vendor and vendee was a circumstance, of at least some weight, to shew that the vendor contracted only as an agent of the vendee. But it is clear that this would be controlled by an agreement explicitly binding the vendor. Then came Dawes v. Peck, 8 Term Rep. 330, the first case in which the action was held to be properly brought by the consignee. But there the goods were not only delivered to the carrier pursuant to the order of the consignee, but to a carrier specially named by him, between whom and the consignor nothing passed but actual delivery of the goods. The consignor, therefore, could not be said to contract with the carrier on his own responsibility-, for he did not contract at all. The decision was perfectly right, although the reasons given for it have led to much misconception of the true principles of the action ; for here, for the first time, we discover the notion that property in the goods, and not privity of contract, is the criterion. We shall presently see how it arose. Although I admit, in its full extent, that the vesting of the property may, where it otherwise would be doubtful, have a direct influence in ascertaining whether there is privity of contract, yet I deny what Lord Kenyon asserts, that the question must be governed by the consideration, in whom was the title to the goods ; and that too, as he says, because he is the person who sustained the loss by the negligence of the carrier, and is, therefore, the proper person to call for compensation. It is easy to shew that the vesting of the property operates, where it operates at all, for other reasons and in a different manner. Where goods are delivered to a carrier pursuant to an order of the vendee, who has not himself settled the terms, the vendor, where he makes a special agreement with the carrier, without expressly making himself liable, will be considered as having contracted as the agent, and in bqhalf of the vendee j for the order necessarily includes the ancillary power to make such a contract, without which such order could not, perhaps, be exe *438 cuted ; and, therefore, where the carrier does not enter into the contract on the personal guarantee of the vendor, he will be considered as looking to the vendee, between whom and himself there is sufficient privity of contract and mutuality of remedy to give either an action on the agreement. Now, in every case of this kind, where the goods are delivered to the agent and servant of the vendee, and by his order, they will be at his risk; because by delivery under such circumstances the property is changed; and so far, therefore, as there is a necessary coincidence of circumstances between property in the goods and interest in the contracts, the former will be - an excellent criterion of the latter. But there may be cases where it will furnish no test at all, where the carrier accepts the goods on the exclusive re¿ sponsibility of a vendor who expressly contracts for himself. There, although the goods should be delivered pursuant to the order of the vendee (in which case the property would be changed) it is clear the express contract would be available only between the immediate parties to it; for between the carrier and the vendee there would be neither privity nor mutuality. In such a case, then, the latter would have property in the goods without an interest in the contract. This, however, would not leave him without a remedy even as respects the carrier, against whom he might, by the custom, have a special action on the case for a tort, founded on the right of property; in which case, the consignor could recover, if at all, only nominal damages on the contract.. With these remarks on Dawes and Peck, I pass to Dutton v. Solomons on, 3 Boss. & Pull. 582, in which, although the judgment was not on the point in question, Lord Alvahxy says, that if a tradesman order goods to be sent by a carrier, although he names none in particular,delivery to the carrier is equivalent to delivery to the purchaser himself, who, from that moment, is charged with the risk, and alone can bring an action for any injury to them. In this, as a general rule, I perfectly concur. Then we come to Potter v. Lansing, 1 Johns. 215, where the goods were shipped “ for account and risk of the consignee, he paying freightas was expressly stated in the invoice and bill of lading. It does not expressly appear that the goods had been delivered by order of the consignee ; but that fact, (on which the correctness of the decision most certainly depends,) seems to have been assumed by the Court; for Tompkins, J., in delivering the opinion of the majority, *439 goes on the ground that delivery to the carrier, had divested the property of .the consignor, and cast the risk on the consignee ; an effect that could be produced only by a delivery to order. The Court, therefore, proceeded on a case, either real or supposed, in which the goods were shipped by order of the consignee, and on his account and risk, he paying freight; and it is, therefore, by no means surprising that the consignee’s right of actibn was supported. Our case, however, is in every material circumstance the reverse ; for the goods were shipped -without order, and expressly for the account and risk of the consignor, who also paid the freight. The last case is Sanderson’s executor v. Lamberton, 6 Binn. 129.; and there it was held, that although there was neither privity nor connection between the person who delivered the goods to the carrier, and the person to whom they were to. be delivered, yet as the former undertook that the latter should pay the carriage on delivery, the latter, by bringing the action, made himself a party to the contract. This is one of the few decisions in Mr. Binney’s Reports, from which my judgment inclines to dissent. The responsibilities of the parties must, I apprehend, be fixed at the time of the contract; for there would be no mutuality if the consignee could consider himself bound or not at his own election, and an after agreement would, therefore, come too late. Both parties to a contract, or neither,must be bound when it isentered into ; and to this I know of no exception, but the case of insurance effected without instructions, in the name of all interested in the subject matter ; and there á party in interest may either adopt the policy and recover in the event of a loss, or, in the event of the ship’s safe arrival, avoid the premium and choose to say he.stbod his own insurer. But in Hagerdon v. Oliverson, 2 Maule & Selwyn, 490, Lord Ellenborough explicitly declares this to be an anomaly, and rests the decision entirely on precedent. In that case, too, it it was argued by counsel with great force, that the doctrine of ratihabitio is applicable only to torts; but I admit I can find no case where the point has been established by adjudication.* But, in Sanderson v. Lamberton, the merits were so plainly with the plaintiff, that at least one of the Judges avowed an astutia to get over all objections on the score of form. The Court, however, recognised the necessity of pri *440 vity of contract with the carrier, by bolding that the consignee had become liable for the carriage in ratifying the contract made with the person who delivered the goods to the carrier.
These are all the cases* that directly bear on the point; and from them it appears the discriminative circumstances • were considered to be, 1st. An engagement to pay thefreight by the'person who brings the action. 2d. An order by the consignee to deliver the goods to any or a particular carrier*, for account and risk of the consignee. And, as a consequence of this, 3d. Not merely the legal property, but a beneficial interest in the goods existing in the person who brings the action : in all which the plaintiff’s case is here deficient. But neither of these separately, nor all of them together, has ever been considered the substantive ground of the action, but only evidence whether the contract was made by the carrier with the consignor or with the consignee. Payment of freight by the consignor has been* held conclusive evidence that the contract was made with him ; and a delivery to order, and the consequent vesting of the property in the consignee, has been held decisive, that the express contract, if any were made, was in behalf of the consignee ; although it may, as I have said, be'otherwise when the carrier and the consignor explicitly confine their responsibility to each other. But no Cqurt has sustained the case of a consignee destitute of all these circumstances.
But an argument has been attempted on a supposed peculiar effect of the bill of lading. “ If,” says Lord Holt, in Evans v. Martlett, 1 Lord Raym. 271, “ goods by bill of lad *441 ing are consigned to A, A is the owner, and must bring the action against the master of the ship and so say I, if the action be case, founded on the custom. But the truth is that an action of assumpsit, as applicable to a transaction of this sort, was utterly unknown in Lord Holt’s time. “ There was a long time,” says Mr. Jeremy, a question much agitated among pleaders, which arose naturally out of the innovation upon the common law duties of carriers. While their occupation was considered only a public duty, the breach was a tort, for which they were liable to an action on the case, founded on the custom. But when they succeeded in establishing the existence of a contract, they became also subject to answer in an action of assumpsit, on the express or implied’ undertaking.” Law of Carriers, 116. When, however, the action on the contract was finally established, it seems to have been no easy matter to forget the old distinction in actions founded on the property ; and hence the perpetual recurrence by Lord Kenyon and other lawyers of eminence, to the ownership of the property, as if it were th ¿ground of the action, and decisive, when in fafft it is only collateral to it, and so expressed in Holt's Law of Shipping, p. 104. Mr. Lawes, in his book on charter parties, speaks generally, where he says the bill of lading vests the property in the consignee, and that he alone must bring the action. It is these general expressions, made without due'attention to the dis- . tinctions that arise out of the form of the action, which have led to the confused notions on this subject, with which the books are filled. For if the action of assumpsit, when it came to be established as a remedy against the carrier, had been divested of the incidents peculiar to the contract of consignment, and considered only in reference to those principles of contract which govern it in other cases, there would, at the present day, have been neither doubt nor difficulty. Stripped, then, of those considerations that arise from property in actions of tort, I take the law to be, that wherever there is an express contract with the carrier, by the consignor in his own right, and not as an agent of the consignee, the consignor is the person to bring the action;. but where he has authority, and undertakes to bind the consignee, the latter has an exclusive right to sue. But the consignee must be bound at the time the contract was made, or pot at, all; for there would *442 be a want of mutuality and justice in permitting him to have tf¡e choice of either acceding to or rejecting it.
But the case has, during the argument, been likened to that of Dutton v. Poole, 1 Vent. 318, where it was held, that the person to whom the promise was to have been performed might bring the action. This decision is so irreconcileable to every principle derived by analogy from other actions founded on contract, that I feel inclined to concur with those who have spoken of it in terms of condemnation. What difference in reason can there be between an express promise by parol and one under seal; and who ever heard of the person with whom a covenant was not made, but to whom it was to be performed, maintaining an action on it? Where the promise is altogether ideal, being raised out of the consideration, by implication of law, there is good sense in supposing it to have been made to the person -beneficially interested in the consideration : as where money is given-to A to be delivered to B. But in Dutton v. Poole, the person who sustained the action was a stranger, not only to the promise, but the consideration also. The form of action may appear of no great account in any case, yet it is important that it should be conformable to even technical reason ; for wherever it has involved any great absurdity, we have found the Courts departing in some.measure from it, and taking a middle course between precedent and reason; thus introducing much uncertainty of decision ; as has taken place with respect to this very case of Dutton v. Poole, which cannot, in all reason, be considered as having settled the law. Taylor v. Foster, Cro. El. 807. Crow v. Rogers, Stra. 592. Pine v. Morris, cited T. Jones, 130, and Piggot v. Thompson, 3 Boss. & Pull. 147, are in flat contradiction to it, while it is supported only by Bourne v. Mason, 1 Vent. 6, and Bell v. Chaplain, 1 Hard. 321. So far from being conclusive, it does not furnish even a general rule ; and if it did, the case before us would not fall within it, for the plaintiff had no beneficial interest in the promise which was to be performed to him, not, as in Dutton v. Poole, for his own advantage, but that of another. On this principle was Piggot v. Thompson decided ; where the commissioners of certain tolls let them to the defendant for a certain sum, to be paid annually to the treasurer of the commissioners. The Court held, that the commissioners, and not the treasurer, could sue on the agreement ; yet the latter had as much interest in the perform *443 anee of the promise there, as the plaintiff has here. The bill of lading constituted an express promise, and the consideration having moved from the consignor who alone was interested in the performance of the contract, I am of opinion, that whether we follow Dutton v. Poole, or the decisions directly on the point, or those general principles which are applicable to all express contracts, or even treat the promise as having arisen by implication of law, the plaintiff ought not to maintain his action.
Duncan, J.
It is well settled that the action against a common carrier must be brought by the legal owner of the goods—by him in whom the legal right is vested; so that the question must depend on the effect of the bill of lading, which, in this case, contained a promise to deliver the property to the plaintiff or his assigns. The defendant bound himself to take care of, and safely carry the goods to the port of destination, Philadelphia, and there deliver them to the plaintiff. The goods were not shipped on account of the shipper ; the bill on its face was absolute ; and the question is simply this: In an action by the consignee'against the carrier, will a Court of law recognise any property but that recognised by the bill of lading ? I do not find this inquiry embarrassed with the difficulty of double liabilities. This mode of considering it relieves it from this difficulty. It is an action on the bill, of lading, a document of property, a consignment by the bill of lading to the plaintiff generally. More than a century since, in 1697, it was determined,, that if goods are consigned by bill of lading to-A, generally,he Í8 the owner, and must bring the action against the master of the ship, if they are lost. So if the bill be general to A, and the invoice only shews they are on account of B, the action can alone be brought by A, for the property is in him, and B only has a trust. But if the bill of lading be special, for the delivery of the goods to the use of B, the latter must bring the action. Evans v.Martlett, 1 Ld.Raym. 271. And in Lickbarrow v. Mason, 1 H. Bl. 360. Lord Loughborough, in commenting on that case, shys, the principle point in it was well determined, that the consignee might maintain an action for the goods, because he had either a special property or a right of action on the contract. And Mr. Lazves, in his Treatise on Charter Parties, 376, when considering the re *444 medies by action on the bill of lading, informs us, that the case had been acted upon and recognised in all subsequent cases. The assignment of a bill of lading, when made with good faith, would entitle the assignee to bring the action,because it would confer on him an absolute right and property. Not so where not made bona fide and for a valuable consideration. Mr. Justice Buller, in giving his opinion in the House of Lords in Lickbarrow v. Mason, 6 East. 21, states, that in the bill of lading there was no restriction or qualification; that such a bill passed the legal property, and recognised the case of Evans v. Martlett; he referred to, and approved of the decision as reported in 12 Mod., where the Court held, that the invoice signified nothing ; for that the consignment in a bill of lading gives the property, except where it is for the account of another, and explains what is meant for account of another, that is, where, on the face of the bill, it imports to be for another. He takes notice of the case of Godfrey v. Furzo, 3 P. Wm. 180. One point there was, what was the law of a pure factor without any demand of his own ? Lord King said he would have no property. Judge Buller says, the expression is used as between consignor and consignee, and obviously means no more in the case put, than that the consignor may reclaim the property from the consignee. He then puts this very case: as between the principal and mere factor, who has neither advanced nor engaged in any thing for his principal, the consignor has a right, at all times, to take back his goods at will; whether they be actually in the factor’s possession, or only on the passage, makes no difference. He may countermand his order, and though the property remains in the factor till such countermand, yet, from that moment, the property revests in the principal, and he may maintain trover. He concludes on the effect of a bill of lading with saying, that it has been the universal doctrine of Westminster Hall for one hundred years past, that by such bill the legal property does pass. A defendant who denies this, must shew, that he has some superior equity, which bears down the letter of the law. What equity has this defendant, I would ask, if there is a recovery in this action ? He could plead it in bar of any other action brought by Patterson. tie is only accountable once; to whom accountable, is of no consequence to him. He promised to deliver the goods safely to the plaintiff. He delivered them in a damaged state. How is it with the consignor? He never reclaimed *445 the goods from the plaintiff, who held the legal title against all the world, in trust for his consignor, to whom he must account for the damages recovered for the deterioration o.f the goods, in the same manner he would be bound to do for the goods themselves, or the price for which he sold them. A bill of lading, in my opinion, nakedly transfers the property to the consignee ; and it is not competent to these parties to dispute his right to recover, who, supposing his consignor had no claim on him, would be entitled to recover, because, whether he has such claim is nothing to a stranger. This is the established principle, and it is in conformity to every action for personal property, as trover ahtf detinue., which are founded on property, and which may be supported by a carrier or bailee, for that would enable them to keep it, against all but the rightful owner. Stra. 505. Bull. 33. 1 Boss, fc? Pull. 47. But the case of a consignee is much stronger ; for he has the legal title ; is the very owner against .all but the consignor; the right, as to him, is defeasible only by him ; having the legal ownership, this will support this action, whether it be for the damage done the goods, or for their non-delivery ; and neither the carrier nor any third person will be permitted to draw up the curtain and look beyond or out of the bill of lading. I do not think there has been any principle advanced, or any authority in opposition to the precise and comprehensive decision of Lord Holt, sanctioned, as it is, by the approbation and recognition of such great names as Chief Justice Lee, Lord Mansfield, Lord Loughborough, Chief Justice Eyre, and Mr. Justice Buller, and a succession of judicial authorities. These, as is strongly expressed by Judge Buller, as well as the universal understanding of mankind, preclude any question-but that a bill of lading does transfer the property. In all the successive improvements in mercantile law,.this doctrine has been adhered to. The cases which have been relied on to establish a contrary rule, on examination do not bear on the question ; they relate to the effect of a collusive indorsement, it being a principle of the common law that a right of action could not be transferred. Mercantile convenience required that an indorsement of a bill of lading should enable the assignee to bring an action for the property in his own name ; but no decision has gone further than to say, that the assignment of a bill of lading by the consignee, for a valuable consideration, and without notice, passed the property, and enabled such assignee to *446 sue in his own name ; and the analogy between bills of exchange and bills of lading has never been carried further. This consideration reconciles all the cases ; and it is a distinction which will be found to go'through every case ; for if there is a fraud between the consignor and his assignee of the bill of lading, this question is open to third parties, and then it is the same thing as if it were tried between the consignor and the original consignee, for such assignment passes no property. On this view of the case, it is unnecessary to consider the questions of evidence; the matter was wholly redundant, because the plaintiff could support this action without any relation to the question of lien, or reference to the stale of the action between him and his consignor.
Judgment for the plaintiff.

 The point has received countenance in the opinion of Justice Park, in Hull v. Pickersgill, 3 Brod. & Bingh. 282,—Gibson, J.

 Since this opinion was delivered, I find in Sargent v. Morris, 3 Barn. & Ald. 277, (a case in almnst every respect like the present, hut which had not then reach-' ed this country,) that the King’s Bench hare sustained me in the positions which 1 took, to wit: That a transfer of the property does not vest an interest in the contract; that such an interest is necessary to support an action on the contract; and that such an action can bn sustained in the name pf the consignee only where the shipper may be considered as having contracted as his agent. The action being in tlie name of the consignee, the rule tor entering^ non-suit was made absolute. Sep the case republished 5 English Com. Bcisv Bep. 283. It is true it appeared on the face of the bill of lading that the delivery to the consignee was to he for the use of the consignor; lint it is impossible to see how that can creale a differences the result is the same if the delivery is in fact to be so; for in either case the consignee is a naked trustee, and it is that circumstance, without reference to the manner in which the trust is disclosed, that is held to be decisive. It will not do to say, when by the terms of the bill of lading the delivery is to be special, that even the legal property doesnot pass: it is obvious the Court, in this case, whether right or wrong, treated the consignee as the legal owner, notwithstanding the delivery was to be special, and rested tlte decision on want of privity and interest in the contract. With respect to Evans v. Martlett, recognised by one of the Judges, it is plain that the language of Lord Holt was used in reference to an action on the custom, the only remedy against a carrier at that time known to the law.—Gibson, J.