Marvin, J.
The action by Richmond and others against Clarke, tried in 1839, was properly brought by them as plaintiffs. They were the owners of the salt, and as such had a right of action in case for the carelessness, negligence and misconduct of the carriers, by means of which it was lost, or in trover for any conversion of it by the earners. If goods are lost or damaged by the carrier, the *347 party to sue for such loss or damage is he in whom the legal property in the goods was vested. (Dawes v. Peck, 8 T. R., 330; Brown on Actions at Law, 200; 1 Chitty's Pleadings, 6.)
I am not aware that it has ever been doubled that the owner of the goods may maintain an action on the case against the carrier for negligence and carelessness by which the goods have been injured or lost. No case was cited upon the argument, and I have found none. It has often been made a question whether the title to the goods was in the plaintiff but, that question being settled, the decisions are uniform that the owner is the proper party to bring the action, whether he is the consignor or consignee. As a rule of evidence, prima facie the title is in the consignee. (Evans v. Marlett, 1 Ld. Raym., 271; Sargent v. Morris, 3 B. & Ald., 277.)
In the present case it is claimed that the defendants were sub-contracting carriers, and that for this reason no action would lie against them by any one except the party with whom they contracted; that there was no privity between Richmond and others, the owners, and the carriers. Concede the fact that Richmond and others had contracted for the carriage of the salt with Green, and that he had contracted specially with the defendants, and in my opinion the conclusion that the owners could not maintain the action upon the case would not follow. Their title to the salt made them the proper party and gave them the right to sue. In my opinion it was entirely immaterial who shipped the salt, or who made the contract with the carriers. The contract related to the property of Richmond and others, and it was specified upon the face of the contract that the property was theirs. The salt was delivered to the carriers as the property of Richmond and others, and to be delivered to them at Lower Sandusky. The law imposes a duty upon the carrier to carry and deliver, and for negligence and carelessness in performing this duty the party injured has his action upon the case. He, whose property was lost or *348 destroyed, is the injured party. (Brown’s Actions at Law, 200; 1 Ch. Pl., 134, 5; Dawes v. Peck, 8 T. R., 330.)
The former action was not upon the contract hut upon the duty resulting from the facts, and the injury complained of was negligence, carelessness and misconduct in the performance of the duty. Richmond and others had a right to avail themselves of all the facts in the case out of which the carrier’s duty arose. They did not complain of the delivery of the salt by Green to the carrier to be transported to Lower Sandusky, and if they had not authorized such delivery they had a right to adopt and ratify it, and by bringing- their action' against Clarke they did so.
The principles upon which an action on the case for a breach of duty is founded are largely considered in Burnett v. Lynch (5 Barn. & Cress., 589). A lessee had covenanted in the lease with the lessor to repair, &c. He assigned the lease to the defendant by deed-poll, .subject to the payment of rent and performance of the covenants in the lease, taking, however, no covenant from the defendant. There were breaches of the covenants in the lease by the defendant, and the lessor sued the lessee upon his covenants and recovered for such breaches. The lessee then sued the defendant, his assignee, in an action upon the case for a breach of duty in not performing the covenants in the lease to the lessor, and it was -held that the action was well brought. What was the privity between the assignor and assignee of the lease? The assignee was himself bound to the lessor by the covenants in the lease, as they ran with the land. The lessor could have sued him. He had the right, however, to bring his action against his lessee upon his express covenants, and did so. It was the duty of the assignee to perform the covenants to the lessor, and the lessee had an interest in the performance of such duty, and for a breach of it he was permitted to maintain his action on the case. In the present case, upon the receipt of the salt by the carriers under the agreement with Green to *349 transport it, the law imposed upon them the duty of performance, and Richmond and. others, the owners, had an interest in the performance of this duty, and' they were damnified by the breach of the duty by the earners. In Leslie v. Wilson and others (3 Brod. & Bing., 171), the action was case against the owners of the ship for negligence, &c., in the master. There was a charter party of affreightment under seal between the master of the vessel of the one part, and the plaintiff and one Adams of the other part. It was objected that the action in case, founded upon the common law duty of the owners of the vessel, would not lie, but it was held that it would. Dallas, C. J., said, “ The owners of a ship for whose benefit she is navigated are bound by the maritime law to owners of goods, shipped and received on hoard to he carried, for the due carriage thereof, and are liable for any negligence on the part of themselves or their servants whereby the goods may be damaged.” That, notwithstanding the charter party under seal, they were still liable for the performance of those duties belonging to them in the character of ship owners, not inconsistent with the stipulations of the charter party. Here was a special contract under seal for the affreightment of the ship by the plaintiff and another, not partners, and the plaintiff, who shipped his own goods, was permitted to maintain his action, on account of his goods, in case for negligence against the ship owners, and they were held to be liable for any breach of duty not inconsistent with the stipulations in the charter party- In Sanderson v. Lambert (6 Binn., 129), the plaintiff had agreed with a common carrier to carry the goods, and such carrier agreed with another to carry them, and he with a third, carrier who received the goods. The action was against the latter for not delivering the property, and it was held that the action was properly brought, and that by bringing it the plaintiff affirmed the contract made with the defendant, apd could not afterwards recover of the carrier with whom. *350 he made the first contract. In the New J. Steam Nav. Co. v. The Merchants' Bank (6 How. U. S. R., 344), Hamden, an express carrier, had made a special contract with the Navigation Co. for the privilege of transporting in the steamers of the company a crate of certain dimensions, in which he placed such articles as he was in the habit of carrying. The Bank in Boston employed him to collect certain checks and drafts in New-York. He received the checks and drafts in Boston and sent them to his agent in New-York, who collected them and placed the money in the crate on board the steamer for the purpose of being conveyed to the bank. The steamer was burnt and the money lost, and the bank brought the action to recover the money of the Navigation Co. It was objected that the action could not be maintained by the bank, that there was no privity, that the money was carried under a special contract with Harnden, The objections were overruled and it was held that the bank, being the owner of the money, could maintain the action. (See pp. 380, 381.)
Richmond and others, the owners of the salt, had the right to bring the action against Clarke, and the question is, what effect should be given in the present case to the verdict and judgment in that action ? This question is raised upon the supposition that Green the present plaintiff could, but for the action by Richmond and others, have maintained an action against the carriers. We shall presently inquire whether he could, and if so, what action? In my opinion, the verdict and judgment in the prior action constitute a bar to this action. In that, as in all actions, a material question, was, whether the plaintiffs, Richmond and others, had any right, any title to the thing demanded 2 If they had no title they could maintain no action, however guilty the defendant may have been regarding the salt and his duty touching it, as a carrier. The circuit judge held that they had no right to bring the action, and he directed a verdict against them, and upon this verdict judgment was entered, *351 and the parties have acquiesced. This judgment estopped the plaintiffs in that action as effectually as though the cause had been submitted to the jury upon the gravamen of the action and they had rendered a verdict against the plaintiffs. It would be extremely dangerous to permit the effect of a judgment as an estoppel to be destroyed by showing that the judge directed the verdict.
The judgment is an estoppel upon all privies, and if the action originally could have been brought by either Green or Richmond and others; then Green is within this rule. This has reference to the law of principal and agent. The principal may always sue upon the contracts made by his agent, though he was not known to the other party at the time the contract was made as the principal, unless the agent contract in his own name under seal. An agent can sue upon a contract when he has a beneficial interest therein or a special property in the thing sold; thus a factor, carrier, warehouseman, &c., may sue in his own name to enforce a contract entered into by him as agent, as he has an interest in the contract. (Brown's Actions at Law, 162; Story on Agency, § 112, 161, 162; Russell on Factors, 246.) In all cases the agent’s right to sue depends upon the non-interference of the principal; he can come forward and sue in his own name in exclusion of the agent’s right of action, unless the contract was under seal. (Brown's Actions at Law, 162; Story Ag., § 402, et seq.; Russell on Factors, 246.) The special rights of the agent will be protected. (Story on Agency, § 410.) The defendant can never be made liable for the same cause of action to the principal and agent. Upon establishing the position that Richmond & Co. could maintain the action against the carrier, it follows that Green cannot for the same cause of action, they having sued and been defeated. But it is not necessary to pursue this inquiry, as, in my opinion, Green could not originally have maintained any action upon the case, or in trover, against the defendants. He had no interest in the salt, no such *352 special property as would have enabled him to sue in case or trover. He had received the salt under a special contract to transport it, and to receive the agreed price in notes at the end of each month, payable at a future day. He had no lien. He delivered the salt to the defendants under his agreement with them. He had no property special or otherwise in the salt, and without this he could maintain no action of tort for any injury to it. All his rights against the defendants depended upon his special contract with them.
In any view that I have been able to take of this case, I have not seen that Green ever had a cause of action in tort against the defendants. Ld. Kenyon, in Dawes v. Peck (supra), says the legal rights of the parties must be certain and depend upon the contract between them and cannot fluctuate according to the inclination' of either. The question must be governed by the consideration, in whom the legal title was vested; for he is the person who has sustained the loss, if any, by the negligence of the carrier, and whoever has sustained the loss is the proper party to call for compensation from the person by whom he has been injured. In that case, the action was case by the consignor who had paid the defendants for bailing the goods. Davis v. James (5 Burr , 2680), and Moore v. Wilson (1 T. R., 659), where the action had been maintained by the consignor, were referred to, and Grose and Le Blanc, Js., said that those actions proceeded on the ground of special agreement between the consignor and carrier. The same view was taken' of these cases in Potter v. Lansing (1 J. R., 215); and see Walley v. Montgomery (3 East, 585); and Fragano v. Long (4 B. and C., 219). This view is an answer to the present action, independently of the verdict and judgment in the action by Richmond and others against Clarke, for this is an action upon the case for the carelessness, negligence and misconduct of the defendants, and not an action upon the special agreement between the plaintiff and defendants.
*353 If an action had been brought upon the special agreement, the measure of damages to Green, the plaintiff, would have been the amount he had paid or should be liable to pay the owners of the salt upon his contract with them for the safe transportation of it, and the profits he would have made if the defendants had performed their contract with him. The release of the owners of the salt has cut off their claim upon the plaintiff. It does not appear that he ever paid anything to the owners. There is no presumption of law that he has paid any particular sum; and if the action were in proper form, it would be incumbent upon him to show in answer to the release the amount he had paid, in order to show how much he had been damnified. As to his profits, if there would have been any, it is sufficient to say, as has already been said, the action is not upon the special contract, and the cause was not tried with a view or for the purpose of recovering such profits only; no such question was made or passed upon by the court.
I have come to the following conclusions: 1. That the action by Richmond and others against Clarke was properly brought by them in their names, and that the judgment therein is a bar to any action by any one against the defendants for the loss of the salt by negligence or misconduct; 2. That Green could never have maintained this action.
The judgment should be affirmed.
Gardiner, C. J.
If the first suit against the defendant Clarke for the non-delivery of the salt was properly brought in the name of the owners, it must be a bar to the present action. This presents the only important question in the case.
It is a general rule that a bailee having a special property and the general owner may either of them sustain an action for the conversion of or an injury to property in which they are interested. The right to sue is indespensable to enable each to protect his particular interest, but as the *354 law will not suffer a defendant to be twxce harassed for the same cause, only one suit can be brought and it will be a bar to every other. (1 Bos. & Pul., 47; 7 Cowen, 328; 1 M. & Selwyn, 147.) Green by his contract with the owners undertook to transport this merchandise to Lower Sandusky, and he thereby acquired such a special interest in the property as would enable him to discharge that duty and to earn the stipulated compensation, and no other. If the defendants had lost or converted the property, he could have recovered its value at the port of destination, less the freight to which they were entitled under their agreement; the whole.of which, after deducting the price for transportation to be paid by the owners, he would hold in trust for them. If the action had been brought by the owners, the measure of damages would have been the value of the salt at Lower Sandusky, less the cost of transportation according to the contract between Green and the defendants. The difference, however, between the price to be joaid by Green and that which he was to receive from the owners for the same services, would in like manner be held by them in trust for the plaintiff. (Griffith v. Ingledew, 6 Serg. & Rawle, 429; 8 Watts, 424; Angel on Carriers, § 492, 491.) The former suit was brought by the owners against one oí these defendants in case and trover, and the contract of the defendants then and now in evidence was introduced to raise the duty on their part as carriers, the breach of which constituted the gravamen of the action. The judge who presided at that trial ruled that no action would lie in behalf of the owners. In .this he erred, if the general principle to which I have adverted is correctly stated, or the authorities cited in its support are evidence of the law. The counsel for the respondent insists with justice, that the decision of the learned judge "was upon the merits. It was therefore the duty of the then plaintiffs to have excepted and reversed it. The idea that one' action may be maintained on the duty arising upon a contract and, when that *355 falls, anotner upon the contract itself, is a refinement sustained neither by principle or authority.
The present plaintiff would have had the benefit of that suit as we have seen, had it succeeded; If the release which he then received from the owners was, as is now claimed (without evidence and against all probability), for a full consideration, paid or secured by him, then the tidal from the time it was executed must have proceeded for his exclusive benefit, and there is every reason why he should be bound by the result. If it was given without consideration, as the owners were concluded by the first suit, all that he lost by the verdict upon his own showing in that case, or should be permitted to recover in this, was the difference between what he was to receive and pay for the freight of the salt, amounting to less than seventy-five dollars. He was allowed upon the first trial in this cause to recover the full value of the property, which his counsel now claims to be the true measure of damages.
But in the second place the owners, the plaintiffs in the former action, had not only an interest in the property but, at their election, an interest in the contract which is now in question and was there attempted to be enforced. The general ownership draws to itself every contract made with a carrier for the transportation of property and the right to sue for a breach of it, resulting in an injury to the right of property, except where the person with whom the agreement is made has a special interest in the subject of it, when the action can be maintained either by him or the general owner. The interference of third persons with the property of another, for the purpose supposed, if justifiable, must be actually or presumptively authorized by the owner. It is immaterial whether the goods are directed to be sent by a particular carrier (8 Term, 330), or generally (5 Bos. & Pul., 584), or whether the consignees gave any orders, or. even knew of the shipment. (1 John. R., 215; 6 Binney, 120; 6 Serg. & Rawle, 429.) In Davis v. James (5 Burr., 2680), *356 the consignors were the owners and plaintiffs; and in Freeman v. Birch (1 Nev. & Man., 420), the decision was put upon the ground of a special property in the laundress with whom the contract was made. (Angel on Car., § 492.) Indeed, it was admitted that the proposition above stated applied where the action was founded on the bailment or on an implied contract, but not where, as in this .case, the sub-contract was express. But to create the relation of bailor and bailee, between the owner and the carrier, there must always be an employment by the authority of the former. Without it, the delivery or transportation of the property, either or both, would amount to a conversion. If the owners in this case, at their election, could affirm the relation established by the act of Green between them and the defendants, it must be immaterial whether that relation and the duty and the promise of the carrier are evidenced by the same instrument, or inferred from facts separately established. There is no more difficulty in ratifying an express, than an implied contract. (2 Greenleaf Ev., § 210; 6 Binney, 120; Angel on Carriers, § 494.) And in 6 Howard U. S. R., 344, the principle was expressly affirmed in reference to an express contract, made -without the knowledge of the owner.
We are told that there is no mutuality; that the owner may elect to enforce the sub-contract, but is not otherwise bound by its provisions. The answer is, that every carrier is bound to know what these defendants were distinctly informed of by their bill of lading, that the property with which they are intrusted has an owner, and that their right to the possession and control of it must be derived from him. The defendants accordingly were driven to prove both contracts on the trial in the former suit, and they had the benefit of both when the judge ruled in that suit that trover could not be maintained by the owners against them.
*357 If the effect of these contracts was to constitute them bailees of the property without the knowledge of the owners, there is no injustice in their assuming the responsibilites of that relation, when a breach of their contract would be followed -by the same consequences, whether enforced by Green or by Richmond & Co.
The defendants claimed under and had the benefit of both contracts on the first trial. The agreement then proved between the owners and Green was express. The quantity to be transported, the port of reception and of delivery and the compensation were each of them fixed by the express stipulation of the parties. In this particular the facts are not changed by the new evidence. The case before us is therefore in every substantial element the same that has been decided twice by the supreme court, and by this court our review. These decisions should, I think, be confirmed: 1. Because, if Green retained a special interest in the property in question, after his contract with the defendants, the first action was properly brought in the names of the owners, predicated upon the rights of property, by which both bailor and bailee would be concluded; 2. Because if Green, as between himself and the defendants, had divested himself of that interest by an independent contract, he could not change his own or the relation of the owners to the property without assuming to act for the latter, to the extent of that change; and they were therefore at liberty, at their election, to consider the defendants as the mere agents of Green and hold him responsible for their misconduct, or to affirm the contract made with them and bring their action as for a tort, founded on the duty raised by the contract, or on the contract itself. In either view the first suit for the same cause of action, supported by similar evidence, tried and determined on the merits, is a bar to the present.
The judgment of the supreme court should be affirmed
*358 All the judges concurred in affirming the judgment on the ground that the former suit was a bar. The question, as to whether the plaintiff originally could have maintained the action, was not passed upon by the court.
Judgment affirmed.