## Power *against* Power.

The joinder of a widow as a co-defendant with the heirs at law of an intestate in an action of partition is error : and cannot be cured by the plaintiff entering a *nolle prosequi* as to her.

A submission, whether by deed, parol or rule of court, like any other naked authority, is countermandable before execution of it, though expressed to be irrevocable.

The death of a party to a submission is a revocation of it, so that the arbitrators could legally act only by force of a fresh delegation of authority.

An award which is void as to one of the parties interested in it, is void as to all the rest.

ERROR to the common pleas of *Perry* county.

This was an action of partition in the court of common pleas of Perry county, in which the parties were William Power, plaintiff, against Alexander Power, Edward Power, Dr John M. Laird, and Julia his wife ; Fatima M'Clelland, Henry M'Clelland, Elias M'Clelland, Hannah M'Clelland and James M'Clelland, by their guardian James Marshell ; and Louisa M'Clelland, by her guardian Frederick Eichelberger, defendants.

5th January 1838, Alexander Power and Edward Power appear by A. C. Harding, and do not gainsay the partition, and agree that judgment be entered as to them.   John M. Laird and Julia his wife do not appear.   Fatima M'Clelland does not appear.   The court, having examined the titles of the plaintiff and of the above named defendants, and being satisfied as to the quantity of their respective parts and purparts, as well of the plaintiff, which has been duly ex- amined, as the above named defendants, they enter judgment against them (except as to Fatima M'Clelland), that partition be made be- tween them according to the statement filed, exhibiting their re- spective parts and purparts.   As to Fatima M'Clelland, the court being of opinion that she is not entitled to any share or purpart, and as to her the plaintiff enters a *nolle prosequi,* which is now done.

The jury being duly selected, empanelled and sworn, &c., it was agreed that they be discharged, and that the following facts be con- sidered as duly found by them as a special verdict, with right to either party to sue out a writ of error, &c.

James Power made his last will, &c., dated 22d February 1813, which was duly proved in April 1813.   He authorized his executors to sell and convey the lands therein referred to.   His executors named resigned ; and John D. Creigh was duly appointed admin- istrator, with the will annexed.   The said will is made part of the

VII.—s 2

facts found by this special verdict.   The widow of James Power died in the year 1823.   On the 14th December 1833, John D. Creigh, administrator, &c. agreed, with the consent of all the legatees of James Power, to sell and convey the lands referred to, to James M'Clelland, according to the terms of an agreement between them, dated the 14th December 1833 ; and in accordance with an agreement between the said legatees, dated the same 14th December 1833, which make part of this verdict ; and in accordance with the same agreement, and agreeably to its terms, a deed was executed and delivered to the said James M'Clelland by the said J. D. Creigh, on the 14th of April 1834.   Though absolute on its face, it was to be subject to the several conditions and agreements entered into between the parties as above stated.

The following papers are made part of this verdict.   The paper headed, The administration account of John D. Creigh, &c. and the agreement indorsed, signed by all the legatees of James Power, dated 14th April 1834.

Account of Fatima Power, with the receipt and agreement of James M'Clelland, dated 29th March 1834.

Receipt and indemnity for legacy to Fatima Power, by James M'Clelland, dated 8th April 1834.

Bond of indemnity, signed William Power, Edward Power, James M'Clelland and John M. Laird, dated 8th April 1834.

Receipt and indemnity for Julia's legacy, signed John M. Laird, James M'Clelland and Edward Power, dated 8th April 1834.

Receipt and indemnity for Edward Power's legacy, signed Edward Power, James M'Clelland and John M. Laird, dated 8th April 1834.

Receipt and indemnity for James Power's legacy, signed John M. Laird, Alexander Power, James M'Clelland, William Power and Edward Power, dated 8th April 1834.

Receipt and indemnity for Joseph Power's legacy, signed by Edward Power, James M'Clelland and John M. Laird, dated 8th April 1834.

Receipt and indemnity of Alexander Power, signed by him, dated 15th April 1832.

Receipt and indemnity for legacy to Fatima Power, from John Power's estate, signed James M'Clelland, dated 10th April 1834.

Also, an agreement of James M'Clelland to sell and convey to John D. Creigh 150 acres of land, dated 14th December 1833, signed and sealed by James M'Clelland and John D. Creigh ; all the papers referred to, to make part of this verdict.

An account also between James M'Clelland and John D. Creigh, beginning 30th November 1830.

Lease to J. M. Laird from J. D. Creigh, dated 5th April 1831.

Lease from J. D. Creigh to J. M. Laird and Robert Clark.

15th April 1834, John M'Clintock, Solomon Godfrey and John D. Creigh were appointed referees, in accordance with the agreement

[Power v. Power.]

dated 14th December 1833. James M'Clelland died in October 1835, leaving six children, who are named as defendants in this suit. James Marshell was appointed guardian of the five first named in November 1835. Frederick Eichelberger, of York county, was duly appointed guardian of Louisa, one of the said children of James M'Clelland. He lived in Dillstown, York county, from the time of his appointment until        1836, when he died.

On the 14th November 1835, by agreement signed by Isaac M'Cord, who was administrator of James M'Clelland deceased, Fatima M'Clelland, his widow, and by James Marshell, guardian of the five children as aforesaid, they agreed to be bound by the award which should be made by the referees before appointed, &c. according to the terms of said agreement, which is made a part of this verdict. The referees had several meetings for the purpose of performing the duties assigned them in the submission. At the meeting at Sipe's, 11th December 1835, Isaac M'Cord, administrator was present. Mr M'Intire, who was counsel for the administrator in regard to affairs affecting the estate, was present. Fatima M'Clelland was also present. James Marshell had notice of the meeting, but did not attend. The report of the referees was afterwards made according to its import, after the several meetings and proceedings as stated therein, and was not signed till the 8th March 1836, which is made part of this verdict. Frederick Eichelberger, guardian of Louisa M'Clelland, had no notice of the appointment, or of the proceedings of the referees; nor had Louisa M'Clelland, his ward. Louisa M'Clelland, and all the other defendants, except James, were children of James M'Clelland by a former wife. At August term, after this suit was brought, James Marshell was appointed guardian *ad litem* of Louisa M'Clelland. Notice was served upon her, and she appeared by him. Fatima M'Clelland, the widow, was originally joined as a defendant in the action. As to her, plaintiff has entered a *nolle prosequi.* Whether the joining of the said Fatima in the action under the facts found, and entering a *nolle prosequi* by plaintiff, is a bar to plaintiff's recovering or not, the jury is ignorant; and they are further ignorant whether plaintiff is bound, because Louisa M'Clelland and her guardian, Frederick Eichelberger, had no notice of the appointment of the referees, or of the time and place of their meeting, and the circumstances under which the report was made; and they are further ignorant whether the fact of the award being made after the death of James M'Clelland, will, under the circumstances found, in law, bar the plaintiff's right to recover; and further, Joseph Power, one of the legatees of James Power, as named in his will, was no party to the agreements, deeds and conveyance above referred to; nor party to this writ of partition, his claim under the will having been otherwise settled (*prout* bond of indemnity and receipt above referred to, signed by Edward Power, James M'Clelland and John M. Laird); and there is an ac-

[Power v. Power.]

tion pending for the legacy of Joseph Power in the name of his assignee under the insolvent laws, against J. D. Creigh, administrator with the will annexed, &c. They therefore refer these several matters to the court: if in law, the said several matters, or any of them, do not bar the plaintiff's right, then they find for the plaintiff according to the quantity of interest in the parts and purparts, per statement hereto annexed. But if the matters so found are, in law a bar to plaintiff's recovery, they then find for the defendants.

We agree to the within, 6th January 1838.

SAMUEL ALEXANDER, *Attorney for Plaintiff.*
FREDERICK WATTS, *Attorney for Defendants.*

*Perry County, ss.*

Alexander Power, Edward Power, Dr John M. Laird and Julia his wife, Fatima M'Clelland, and Henry M'Clelland, Elias M'Clelland, Hannah Hays M'Clelland, and Joseph P. M'Clelland, by their guardian James Marshell, and Louisa M'Clelland, by her guardian Frederick Eichelberger (and James Marshell appointed her guardian *ad litem*), were summoned to answer William Power of a plea, that they, together and undivided, do hold two certain tracts of land, &c., and partition thereof do gainsay, &c.; and thereupon, the said William Power, by S. Alexander, his attorney, complains that, whereas the said defendants and the said plaintiff, together and undivided, do hold two tracts of land, situate in Centre township, in said county, one thereof containing two hundred and four acres, more or less, adjoining lands of Henry Beelin's heirs, Daniel Smith, Joseph Trimmer and others: the other thereof, containing sixty-six acres, more or less, adjoining lands of John D. Creigh, Esq., Charles Postley, John Bosserman and others, with the appurtenances, whereof it belongs to the said William Power to have twelve hundred and thirteen shares (the whole into four thousand one hundred and forty-four shares to be divided); and to the said Alexander Power, to have four hundred and fifty shares; and to the said Edward Power, to have four hundred and fifty nine shares; and to the said Dr John M. Laird and Julia his wife, to have seven hundred and forty-five shares; and to the said Fatima M'Clelland, Henry, Elias, Hannah Hays, Joseph P. and Louisa, to have twelve hundred and seventy-seven shares (the whole into four thousand one hundred and forty-four shares to be divided), with the appurtenances, to hold to them in severalty, so that the said parties aforesaid may thereof severally apportion themselves; and the said defendants deny partition thereof to be made between them according to the statute in such case made and provided, and urgently permit not the same to be done, contrary to the form of the statute; whereupon said William says he is worse, and hath damage to the value of one hundred dollars, and therefore he brings suit, &c.

[Power v. Power.]

| William's share, valued at | | $1213 | 51 | say | 1213 | shares |
|---|---|---|---|---|---|---|
| Alexander's do. | do. | 450 | 39 | do. | 450 | do. |
| Edward's do. | do. | 458 | 93 | do. | 459 | do. |
| Dr Laird & wife's | do. | 744 | 87 | do. | 745 | do. |
| M'Clelland's do. | do. | 1276 | 81 | do. | 1277 | do. |
| | | $4144 | 51 | | 4144 | shares |

On leave given, plaintiff enters a *nolle prosequi* as to Fatima M'Clelland, and suggests that the 1277 shares, as in said declaration mentioned, belong to the said Henry, Elias, Hannah Hays, Joseph P. and Louisa M'Clelland, the children and heirs of the said James M'Clelland deceased.

Judgment upon the special verdict for the plaintiff, agreeably to the above statement.

The court was respectfully requested to charge the jury on the following points:

1st. The evidence given exhibits no title in Fatima M'Clelland, the widow of James M'Clelland deceased; and she having been joined in the action as a co-defendant, the plaintiff cannot recover.

2d. If the jury believe that Louisa M'Clelland had an interest in the land before and at the time the referees heard the parties and made their report fixing the amount of the estate of each, and neither she nor her guardian (Col. Eichelberger) had any notice of the time or place of the meeting of the referees, and the award was *ex parte* as to her, her interests cannot be affected by it, and the amount of her interest in the land cannot be fixed by it.

3d. That if the jury believe the award of the referees was made after the death of James M'Clelland, and one of his heirs at law, nor Col. Eichelberger, her guardian, had any notice of the existence of an agreement of reference, or of the time or place of meeting of the referees, the said award is a nullity, and is neither admissible in evidence in this suit, nor conclusive of the rights of any party to it.

Agreement made the 14th of December 1833, between James M'Clelland of the one part, and the heirs of James Power, Esq., deceased, of the other part: Whereas, James M'Clelland has purchased the real estate of James Power, Esq., deceased, from the administrator, at and for the sum of 5000 dollars—the one half to be paid on or before the 29th of March next, and the residue to be paid in five equal annual payments thereafter; and in order to enable him to comply with his payments, has sold to John D. Creigh one hundred and fifty acres, to be taken off the east end of the wood land tract, for 525 dollars, to be paid the one-third in hand, the residue in three payments. Now, it is hereby agreed by the said M'Clelland with said heirs, that if all or any of them shall or will, on or before the said 29th of March next, furnish him with a proportionable part of funds, either in money or releases for their shares to the adminis-

[Power v. Power.]

trator of said deceased, and such as shall be satisfactory to said administrator, that then and in that case each and every one so complying shall be entitled to have, hold and enjoy such interest in the residue of said real estate, or they may advance funds to pay therefor by money or otherwise, and that all said parties in interest then shall hold as tenants in common, in proportion to the amount of their payments. And it is further agreed, that in case all or any of said heirs of James Power do not furnish funds as aforesaid to said M'Clelland, to enable him to comply with his purchase, that, in that event, such person not complying shall for ever be barred from claiming under this agreement, and said M'Clelland and those complying shall hold it freed and discharged from the operation or effects of this agreement, any thing heretofore to the contrary notwithstanding. Witness our hands and seals the day and year first before written. And we, the parties to this agreement, do further agree, that a distribution of the interest of each of the heirs under the will of the said James Power deceased, shall be made by three disinterested men mutually chosen by the parties, and their decision to be final and conclusive between the parties of the amount of the legacies, bequests and entire interest of each heir in the aforesaid estate; the distribution to be made as soon as may be convenient to said parties. Witness our hands and seals the date above written.

(Signed by James M'Clelland, William Power, John M. Laird, Alexander Power and Edward Power.)

We agree that John R. M'Clintock, Solomon Godfrey and John D. Creigh shall be the three referees within referred to, and that they meet at James M'Clelland's on the 12th of May next.

(Signed by the same persons.)

In pursuance of notice given by the parties interested in the annexed agreement, the referees (John R. M'Clintock, Solomon Godfrey and John D. Creigh) met, and after being sworn agreeably to law, by consent of parties, adjourned from time to time, and met on the 11th of December 1835 at S. Sipe's, in Newport; and after proceeding in part, and by consent of all the parties, adjourned to meet at the house of Dr Jonas Ickes, in Bloomfield, on the 9th day of January, A. D. 1836, at which time the referees met and examined the evidence, &c. adjourned, and now report as follows, to wit:

That William Power furnished funds to the amount of 1213 dollars 51 cents.

That Alexander Power furnished funds to the amount of 450 dollars 39 cents.

That Edward Power furnished funds to the amount of 458 dollars 93 cents.

That Dr John M. Laird and Julia his wife furnished funds to the amount of 744 dollars 87 cents.

That James M'Clelland and Fatima his wife furnished funds to the amount of 1276 dollars 81 cents.

[Power v. Power.]

Which said several sums of money aforesaid were severally furnished by the respective persons aforesaid, to aid in the purchase and payment of the real estate of the late James Power, Esq., deceased, from the administrator with the will annexed of the said deceased, and in pursuance of the agreement annexed; and which persons aforesaid, to wit, William Power, Alexander Power, Edward Power, Dr. John M. Laird and Julia his wife, and James M'Clelland and Fatima his wife, *are severally entitled to hold as tenants in common, in proportions to the aforesaid sums, the real estate conveyed by the administrator of said James Power deceased, as aforesaid.*

In witness whereof we, the referees, have set our hands and seals the 8th day of March, A. D. 1836.

JOHN R. M'CLINTOCK,　[L. S.]
SOLOMON E. R. GODFREY,　[L. S.]
JOHN D. CREIGH,　[L. S.]

Whereas, on the 14th of December 1833, an agreement was entered into between James M'Clelland of the one part and the heirs of James Power deceased of the other part, for the distribution of the estate of said deceased, and to ascertain the interest of each heir in the same, and to apportion the real estate, &c., reference to the agreement will appear, from which time James M'Clelland had died; and leaving a wife and children, Isaac M'Cord having administered on said M'Clelland's estate, and James Marshell being guardian for some of the heirs of M'Clelland: Now, it is hereby agreed by the undersigned, claiming an interest under the aforesaid agreement, severally agree with the heirs of James Power deceased (the second party in the aforesaid agreement), that the award to be made in pursuance of the aforesaid agreement (by the referees) shall be as fully binding on us, to the amount of our respective interests, as if we had been at the time parties to said agreement; and the said referees shall have the same authority as originally given to them by the said agreement.

Witness our hands, 14th November 1835.

ISAAC M'CORD,
FATIMA M'CLELLAND,
JAMES MARSHELL.

Errors.

1. The court erred in entering a *nolle prosequi* as to Fatima M'Clelland.

2. In entering a judgment for the plaintiff.

3. In entering a general judgment for the children of James M'Clelland, instead of a judgment for the share of each.

4. In entering a judgment according to the terms of the award to which Louisa M'Clelland or her guardian was not a party and had no notice.

*Biddle* and *Watts,* for plaintiffs in error.
*Alexander,* for defendant in error.

[Power v. Power.]

The opinion of the Court was delivered by

GIBSON, C. J.—The joinder of the widow, who had not an immediate estate, was an incurable error.   Her husband died intestate ; and by the act of 1794, she had but an annuity in the nature of a rent charge, and consequently could not be a party to an action of partition.   But it was thought her name might be disposed of on the record by a *nolle prosequi.*   That however is not a remedy for a misjoinder of parties, which is necessarily fatal if advantage be taken of it in season.   In a joint action for a *tort* which could not have been committed jointly, it can be successfully applied to a misjoinder of defendants only when several damages have been assessed ; and even there, perhaps, because the time for objection has gone by. But in a personal action for a wrong that may be done jointly, the joinder of defendants not guilty is immaterial, because a *tort* is the separate act of each concerned in it, by reason of which one may be acquitted and another convicted, according to the proof ; and it is for this reason that a plaintiff in trespass may enter a *nolle prosequi* against one or more before judgment, and proceed against the rest. But real actions, or such as concern the realty, stand on a different rule ; for a bare tenant in common, sued in trespass or case for a thing pertaining to the freehold, may plead the tenancy in abatement though his estate is several ; 1 *Saund.* 291, *n.* 4 : much more may the tenant in a real action.   And parceners are to be sued jointly, even if they have come to the estate by different descents ; 2 *Vin.* 67. Partition is a real action, and stands at common law on the reason which, in actions on contracts, forbids a *nolle prosequi* for a cause which goes to the writ, and allows it for any thing which is cause of personal exemption by matter subsequent.   Thus, though the contract was made, in fact, with all the defendants, yet if by reason of infancy or coverture it were not in law the contract of all, the plaintiff could not by this means evade the consequences of having joined parties originally irresponsible.   This distinction, which was taken in Nokes *v.* Ingham, 1 *Wils.* 90, rests on considerations that arise out of the form of the matter put in issue.   When the allegation of a contract with particular persons varies from the proof, it cannot be made to conform to it by a *nolle prosequi* which, while it lops off supernumerary branches from the style of the action, leaves the form of the issue unchanged, and the defendants at liberty to say the contract laid had not been proved.   It must be evident therefore, that a *nolle prosequi* would be nugatory.   So here, an averment that the plaintiff and the defendants including the widow hold together in the proportions laid, would not be made more susceptible of proof by dropping her in the prosecution ; and this obviates the argument drawn from our statutory provision borrowed from the 8 and 9 W. 3, that a plea in abatement be not admitted in partition ; if indeed that clause relate to any thing but abatement by death.   The defendants may avail themselves of the variance without pleading it ; and if they might not, that would be a decisive reason to say the

[Power v. Power.]

case is not within the principle of Rice *v.* Shute, 5 *Burr.* 2611.   But the application to it of that principle would be impracticable for other reasons.   It is found to be perfectly congruous and wholesome in actions founded on contract ; but it would be unmanageable in partition where the judgment *quod partitio fiat* must be executed according to the estates laid in the declaration ; for to vary the arrangement and quantities of these, by striking the name of a party from the style of the action, would throw the judgment, the record, and the titles set out in it, into irreconcileable confusion.

It may not be amiss to pause, in order to remark that there scarcely seems to have been any thing in the shape of a record below ; and that this was perhaps the cause of the blunders which occurred at the trial.   It is represented in our paper books, that after a sort of *ex parte* investigation of the merits, judgment by default was rendered against three of the defendants, according to something called a statement filed ; and then a jury was sworn without declaration or plea—to try what ?   Heaven knows ; for they were sent to sea without chart or compass.   Such irregularity is destructive of every thing like certainty, and is by no means creditable to our practice.   To finish as the matter was begun, we have a writ of error by agreement, it is said, to remove an interlocutory judgment.   Were it not to put an immediate end to the suit, in order to prevent the parties from floundering still deeper in it, such an agreement would not be regarded.

Not only, however, is the action defective in its origin and progress, but the title also is.   The arbitrament is void.   A submission, whether by deed, parol, or rule of court, like any other naked authority, is countermandable before execution of it, though expressed to be irrevocable.   Vynior's Case, 8 *Rep.* 162.   Here M'Clelland, in whom the title was vested, and who had agreed to convey to the other parties estates proportionate to their advancements towards the purchase money he was bound to pay for it, the aliquot parts of which it was to have been the business of the arbitrators to ascertain, had died in the mean time, and the original submission was revoked. It was so entirely gone that the arbitrators could have legally acted only by force of a fresh delegation of authority.   The subsequent ratification of it by M'Cord the administrator, and Fatima the widow, could not restore it, because they were strangers to the title; nor was it restored by the ratification of Marshell, the guardian of five of the children.   It is not stated whether the assent of the surviving parties, which might perhaps so far make it a submission by parol, was had ; nor is it necessary to inquire whether an award pursuant to a parol submission be not within the statute of frauds ; nor whether the guardian who assented to it were competent to bind his wards by an agreement whose purpose was to transmute their money into land : it is enough that at least one of the children was not a party to it.   It is expressly stated that neither Louisa nor her guardian had any knowledge of the appointment or proceedings of the

VII.—T

[Power v. Power.]

arbitrators : and the award, being void as to her, is void as to all. An implied condition of their assent was that all should be bound ; and indeed partition would be impracticable were the undivided interest of one to pervade the several portions of the rest.    The plaintiff may, perhaps, recover in a proper form against proper parties, by proof of payments, independent of the award ; but that being a part of the title as set out, and a defective one, the defence must prevail.

Judgment below reversed, and judgment for the defendants.