## Gallup *against* Reynolds.

Upon a rule to show cause why a judgment should not be opened, and defendant let into a defence, the parties entered into an agreement to refer the case to arbitrators " whose award should be final, and upon which execution might issue. *Held*, that an award made and filed under such agreement, does not require the sanction of the court, or any other formality, in order to entitle the plaintiff to an execution upon it.

The proper practice is to try the validity of a judgment by a collateral issue; but pretermitted matter of defence shall be tried by an issue in the case itself.

ERROR to the common pleas of *Luzerne* county.

In this case, a judgment was originally entered by Chauncey A. Reynolds against James D. Gallup, for the sum of 2100 dollars upon a judgment bond in the usual form, with a warrant of attorney contained therein, upon which a *fieri facias* issued to August term 1832, No. 48.

January 17, 1833, the defendant in said judgment filed an affidavit, laying grounds for a rule upon the plaintiff, to show cause why the judgment should not be opened, and defendant let into a defence; which rule was thereupon granted by the court.

July 13, 1833, and pending said rule, the parties entered into the following agreement, to wit:

" Whereas, sundry disputes, claims, controversies, and differences exist between the above named parties, as to the amount of moneys now legally and justly due on the said judgment; and as to the payment and just defences of the defendant: Now, therefore, to settle and adjust the same, and all claims between the parties, and ascertain the amount due on said judgment, and the respective claims of the parties, we agree to leave the same to the final award and arbitrament of Benjamin Dorrance, Thomas Pringle, and John Smith of Plymouth, who are to meet at the house of Joseph L. Worthington, in Plymouth, on Tuesday the 30th of July, instant, at one o'clock, P. M., and examine the proofs and allegations of the parties, and make an award and ascertain the sum to be paid on said judgment; and when so ascertained by said award, execution may immediately issue for the said sum and costs; and in the meantime the judgment shall remain a lien on the property of the said Gallup. The award by a majority to be final, and conclude the parties. And further, the parties bind themselves each to the other in the sum of two thousand dollars, to abide by, perform, and fulfil the said award, so to be made by the said referees as aforesaid, or by a majority of them. Witness, the hands and seals of the parties," &c.

[Gallup v. Reynolds.]

" After sundry adjournments, and the previous substitution of Joseph Wright in the place of John Smith, by consent of the parties, arbitrators met at Joseph L. Worthington's, in Plymouth, this 27th of March 1834, and after being duly sworn, and hearing the proofs and allegations of the parties, we award for the plaintiff the sum of seventeen hundred dollars. Witness, the hands and seals the 27th of March 1834."

Which award was filed of record, and executions issued upon it, and the real estate of the defendant was levied, condemned, sold, and conveyed to the plaintiff.

The plaintiff assigned the following errors:

1. The award or report of the referees was not read in open court by the prothonotary, as required by the rules of court adopted in the 11th judicial district, nor was it read at any subsequent time.

2. The award or report of the referees was never approved of by the court, according to the requisition of the act of assembly, passed in 1705.

3. There was no judgment entered upon said award at any time, either by the court or the prothonotary.

4. The execution, in consequence of the above errors, was illegally issued, and the subsequent proceedings thereon are void.

*Kidder* and *Greenough*, for plaintiff in error, cited 5 *Serg. & Rawle* 51; 1 *Serg. & Rawle* 24; 1 *Dall.* 314; 1 *Serg. & Rawle* 209; 3 *Watts* 29; 5 *Binn.* 387.

*Woodward* and *Wright*, contra, cited 6 *Binn.* 37.

The opinion of the Court was delivered by

GIBSON, C. J.—The practice of opening a judgment entered on warrant of attorney to let in a defence specially sworn to, is peculiar to our jurisprudence; and it would seem, from the looseness with which it has prevailed, that its nature is not very distinctly perceived by ourselves. We have no traces of it in the English books; for where the warrant has been procured from an infant or a feme covert; or for a usurious consideration; or as an inducement to live in a state of prostitution; or to secure a void annuity, or the like; their practice has been to order it to be delivered up, and the judgment, if one has been entered on it, to be set aside. Perhaps it may be thought that this is done upon a supposition of irregularity, but their practice is the same in the analogous case of a regular judgment by default on an affidavit of merits. No instance can be found of a judgment opened, by an English court, in our sense of the term; on the contrary, their practice is to award a collateral issue, and only when facts are alleged to be in contest, instead of an issue in the cause. Our practice, however, seems to be the better one, as it gives the defendant all proper advantage of matter of original defence, without loosening the plaintiff's hold on

the security gained by the judgment. Our remedy also, for irregularity or collusion in the rendition of a judgment, is to overturn it; but for pretermitted matter of defence, it necessarily is to open it, for it is impossible to say what may be found due. Our practice, therefore, is to try collusion by a collateral issue, but matter of defence by an issue in the cause. Were this distinction kept in view, it would prevent much misconception and confusion. In Kellog *v.* Krauser, it certainly was in the view of Chief Justice Tilghman, when he said: "I hope it is not now a matter of doubt whether a court of common pleas can entertain a motion to *strike out* or *open* a judgment entered on warrant of attorney, or to order a *feigned* issue to ascertain necessary facts." Yet it has not always been attended to; for, though the bond and warrant in Whiting *v.* Johnson, 11 *Serg. & Rawle* 438, were given to defraud creditors, and consequently presented a case for a feigned issue and striking out, as the matter was held in Gurney *v.* Langlands, 5 *B. & Ald.* 330, the judgment was opened in the first instance to try, in the action, what could not be tried betwixt the parties. To open a judgment, however, is not to set it aside; for when it is closed again by the finding of a sum due, an execution issues on it as if it had not been disturbed. It may have been opened on terms; and it is usual to add a direction that it stand as a security, which, however, seems to be unnecessary, as the opening of it deprives it of no quality but its maturity for execution. Now, the substance of the agreement here was, that the judgment should be opened without waiting for the decision of the court on the rule to show cause; and that the sum due should be ascertained by the arbitrament of particular men instead of the verdict of a jury. Was there, then, an action pending within the purview of the act of 1705? There was, strictly speaking, no action pending then; nor has there been since. The pendency of the action, if it ever had a beginning, was terminated by the judgment into which it instantly passed; and nothing was pending by the agreement but a subordinate proceeding to ascertain the sum for which execution might issue. Nor would the pendency of the action have been restored, had the judgment been opened by order of the court; for it would have remained a judgment still, and the inquiry would still have been a subordinate one to ascertain the amount due by the verdict of a jury—a matter which might have been referred, but not as an action pending within the act of 1705. It is asked, then, to what statute is this species of arbitrament referable? To no statute. It is referable to the agreement of the parties who were a law to themselves. It was doubtless convenient and useful to class these forms of arbitration which were most commonly in use and regulated by the statute or the common law; but it follows not, where there is no positive prohibition in the way, as there is in the case of land title, that there can be no other occasion or form of it by the agreement of parties competent to settle their differences in their own way.

[Gallup v. Reynolds.]

In this instance they might have fixed the sum by their own act; and what else did they, when, on the foot of the maxim that things are certain which can be made so, they agreed to let it be whatever should be named by the men designated? If then, they had power to bind themselves, the terms of agreement dispose of the exceptions at a breath. Execution was to issue *immediately*, and consequently without waiting for the reading of the award required by the rule of court, the approval required by the act of 1705, or the second judgment required by no authority at all. The execution and subsequent proceedings were consequently regular.

Judgment affirmed.