## Bellas *versus* Dewart.

Judgment will not be entered on an award or report of persons amicably chosen by the parties to make partition or appraisement after an interlocutory judgment *in an action of partition.*   It is not competent for the parties to substitute their own contrivance for the writ of inquisition provided by law.

ERROR to the Common Pleas of *Northumberland county.*

This was an amicable action of partition between William L. Dewart and Samuel Hunter, plaintiffs, and Hugh Bellas, defendant, in relation to 236 acres and 29 perches of land near Sunbury, surveyed in the name of E. Wallis.

The plaintiffs held six undivided sevenths of the premises, under a recent purchase at sheriff's sale, as the estate of Robert S. Grant, deceased, the youngest son of Thomas Grant, deceased. The defendant, the other seventh, the estate formerly of George Grant, deceased, the eldest son of Thomas Grant, deceased, purchased by defendant at sheriff's sale, in 1822.   Neither party disputed the title to those proportions of interest, nor the *nature,* comparative *ages,* nor *origin* of the titles.

The action was entered of record in the prothonotary's office, by agreements executed under the hands and seals of the parties, on the 28th of November, 1850, under which, on the same day, by consent, judgment was entered *quod partitio fiat.*   On the next day, by another agreement, under the hands and seals of the parties, entered of record in that office, it was agreed, that, to avoid expense and delay, the premises should be parted or appraised by six men, mutually chosen, and named in the agreement, who should be sworn to make *partition* or *valuation,* &c., "and what they did they should reduce to writing, and file with the prothonotary, to be entered of record: and that this report should have the like effect and force in all respects, and be as binding upon the parties as the return by a sheriff and jury, or an inquisition of partition or valuation by due course of law."   The six persons viewed the

H

premises in presence of the parties; and, on the 3d December, 1850, filed their report in the office, stating that the said land and tenements could not be divided without spoliation or loss to one party or the other, and therefore, they valued the said lands at $2007.50.

At January Term, 1851, the defendant, Bellas, holding, without dispute, the *elder* title, moved the court for judgment upon the report, offering to pay six-sevenths of the valuation money to the plaintiffs, but they opposed the motion; and their counsel filed exceptions in the name of David Fisher, *then first* introduced, and produced in court an agreement between Messrs. Dewart and Hunter, and Fisher, dated 2d November, 1850. By this paper Dewart and Hunter agreed to sell to Fisher all their right and title to six undivided sevenths of the premises, " said Dewart and Hunter to be at the expense of *procuring a partition between themselves* and Hugh Bellas, who is the owner of the remaining one-seventh;" Fisher to make a payment, secure the rest, and receive a deed on 1st April. The consideration of the purchase was agreed to be $2150 ; of which $600 was to be paid on the 1st April, 1851, and $100 each year thereafter, till the whole was paid, with interest to be paid annually. On the agreement was an admission of the receipt from Fisher of $25 on November 23, 1850, on the agreement.

The exceptions were : 1st, that the proceedings were illegal; 2d and 3d, that Fisher was the owner of six-sevenths, and had not directed the plaintiffs to enter any action of partition, nor had any notice of the proceedings until December 26. The plaintiff conceded *non-notice*, alleging that Fisher was a stranger to him in law and in fact.

The court, at January Term, postponed a decision upon the motion for judgment until April Term; and then evidence was given by plaintiffs, that, pending the question before the court, to wit, on the 31st March and 1st April, 1851, Fisher received a deed from plaintiffs, and went into possession, giving bonds for the purchase-money.

Upon argument, POLLOCK, J., overruled the motion for *judgment, and* directed the proceedings to be set aside, at the cost of the plaintiffs.

The agreement for partition was as follows :—

The said plaintiffs claim six equal undivided seventh parts (the whole into seven equal parts to be divided) of and in a certain tract of land situate in Upper Augusta township, in Northumberland county, surveyed in the name of Elizabeth Wallis, adjoining lands late of Aaron Robins, deceased, lands surveyed in the name of James Jordan and James Hunter, the manor of Pomfret, and land of John Clark, containing two hundred and thirty-six acres

[Bellas *v.* Dewart.]

and twenty-nine perches, more or less, and allowance of six per cent, &c., being the same tract lately occupied by Robert Grant, deceased. And the said parties agree that this action be docketed by the Prothonotary as of November Term last, and that he enter immediately, judgment that partition or valuation be made, with the same effect as if judgment were entered in due course of law by the court.

Witness our hands and seals, 28th November, 1850.

Signed by W. L. Dewart, Samuel Hunter, and Hugh Bellas. (Filed 29th Nov. 1850.)

Subsequently the following agreement was entered into:

Amicable Writ of Partition or Valuation. The plaintiffs claiming *six* equal undivided sevenths, and the defendant *one* such seventh.

Agreement for amicable partition or valuation, by substituting selected partitioners, instead of an inquest.

To avoid expense and delay, said parties agree that, the premises, viz., a tract of land, situated in Upper Augusta township, in said county, adjoining lands late of Aaron Robins, deceased, lands surveyed in the name of James Jordan and James Hunter, the manor of Pomfret, and lands of John Clark, surveyed in the name of Elizabeth Wallis, containing two hundred and thirty-six acres and twenty-nine perches, more or less, and allowance, and lately occupied by Robert S. Grant, deceased, shall be parted or appraised as follows:—The said parties hereby mutually choose and agree, that said partition, or valuation and appraisement, shall be made by the six persons whose names are as follows, viz.: John W. Friling, et al., who shall all be duly sworn or affirmed to make partition and valuation, or either of them, according to the best of their judgment, truly and honestly, and with impartiality. And said parties agree that said persons (partitioners) shall, after six days' personal notice to either of said plaintiffs, or to the said defendant, and proof thereof, proceed to and upon the premises, and carefully view and examine the same, and with as little delay thereafter as practicable, decide whether the same can be parted and divided between the said plaintiffs and said defendant, without prejudice to, or spoiling either of said parts, and if they can be so divided so as to accommodate both parties, then said partitioners shall so part and divide the same, and make a just and reasonable valuation of each part, at a fair cash price, and determine what owelty of partition, if any, shall be paid; but if the premises cannot be parted and divided as aforesaid, that then the said partitioners shall value and appraise the whole of said premises at a just and reasonable cash price; and they shall reduce to writing, and sign and seal, what they do in this behalf without delay, and file the same with the Prothono-

tary, to be entered of record, and the report so filed and entered, shall have the like effect and force in all respects, and be as binding upon said parties as the return by a sheriff and jury, or an inquisition of partition or valuation, in due course of law.

A certified copy of this agreement shall authorize the proceedings above mentioned.

The partitioners to meet at nine o'clock, A. M., the third of December (Tuesday) next, at J. C. Perkins's Hotel, in Sunbury, of which the parties take notice.

Witness our hands and seals, November 28, 1850.—Signed by Dewart, Hunter, and Bellas.

(Filed Nov. 29, 1850.)—There were no witnesses to it.

The return of the partitioners was as follows:

We, the persons named in the within agreement, went to the lands and premises therein specified, and then and there, in the presence of as many of the parties as chose to be present, the said lands and tenements with appurtenances, having respect to the true value thereof, on our oaths, duly administered, find and report, that in our opinion the same cannot be divided, without spoliation or loss to one party or the other. Therefore we have valued the said lands, at two thousand and seven dollars and fifty cents. In witness whereof, we have hereunto set our hands and seals, this third day of December, A. D. eighteen hundred and fifty.

HENRY WEISE, and others.

(Filed 3d Dec. 1850.)

One of the errors assigned was to the refusal of the court to enter judgment, and in setting aside the proceedings.

The case was argued by *J. Pleasants* and *Jordan* for plaintiff in error.

*Miller* and *Bruner* were for defendants.

The opinion of the court, filed August 18, was delivered by

GIBSON, C. J.—As the first exception is well founded, it is unnecessary to consider the others. The agreement to refer the partition to men chosen by the parties instead of leaving it to the inquest prescribed by the law, was a submission to arbitration after interlocutory judgment; and if there is no statute to support it, the award must fall with it. In Pennsylvania, it is true, agreements of parties or counsel have been recognised as the law of the case so far as regards questions of right; and they have had an influence even in overturning forms of law and making a Pennsylvania record, when sent into another state, a by-word and a jest. We have heard of one sort of action being turned into another, and

[Bellas *v.* Dewart.]

money counts being filed in trespass or trover; but, though such a practice is simply barbarous, it supposes the existence of a proper form of action, with pleadings to admit the merits of the case. It is to the facilities afforded by these agreements, encouraging as they do laziness and inattention, that our exuberant ignorance of the principles of an action, and of practice, is to be ascribed, together with the teasing and profitless litigation which it produces. It has never been supposed, however, that an agreement could legitimate a spurious proceeding resting not even on the convenient foundation of a fiction.   No lawyer could suppose that the Common Pleas would sustain an agreement between landlord and tenant to originate a summary proceeding in that court, in order to save the expense by waiving the preparatory proceeding before two justices.   The maxim *consensus tollit errorem*, is applicable, in its connection with judicial proceedings, only to the waiver of irregularity; but a proceeding merely irregular, is to be distinguished from one defective and void, which no consent can cure. *Broom's Leg. Max.* 59–60; Blanchenay *v.* Burt, 7 *Jurist* 575. *Modus aud conventio vincent legem;* but that has regard to conditions in grants, covenants, and agreements, which certainly make the law of the contract; yet, even as to them, says Mr. Brown, it is to be remembered, that *potior et potentior est dispositio legis quam hominis:* and we may add *omnis innovatio plus novitate perturbat, quam utilitate prodest.*   What have we, then, but an innovation that would do more harm by its novelty than good by its convenience?

There is but one species of arbitration known to the common law.   The parties submit their controversy to persons chosen by them without invoking the auxiliary power of a court; and as the award does not bind the right, it cannot be enforced at law, the remedy being an action on the award or the arbitration bond, or a bill in equity for specific performance of a collateral act.   Shortly before the 8 & 9 *Wm.* 3, a practice had sprung up to make the submission of a pending cause a rule of court; and this also was said to be a reference at common law.   It was, however, soon merged in that statute—a proof of the inadequacy of an agreement to change the law.   The preceding are the only forms of arbitration known in England; and it is scarce necessary to say that the submission before us accords with neither of them.

In Pennsylvania another form was introduced by the Act of 1705, which authorized the parties to a pending action to consent to a rule "for referring their accounts to certain persons mutually chosen by them in open court;" and gave to the award, being approved by the court, the force and effect of a verdict.   Though this Act has been carried beyond cases of mutual accounts and appointment in open court, it has not been extended to actions of partition after judgment; nor could it be, for there could be no

[Bellas *v*. Dewart.]

award where there might not otherwise be a verdict. In any event, it would not be error to set aside an award subject to the approval of the court like a verdict. In Gallup *v*. Reynolds, 8 *Watts* 424, a reference to arbitrators after judgment, was held not to be within the Act; still the award was held to be a liquidation of the sum due in a collateral issue to ascertain it, and as binding as if it were the immediate act of the parties. Nothing was said, however, to foster a notion that they might supersede the process of the law.

Thus stood arbitration till the Act of 1806, which empowered parties, either out of court or in it, to refer their controversies to persons chosen by them, and required the courts to give the award, filed on proof of the submission, the same effect as if it were made under a rule of court. Its mode of proceeding prescribed so many formalities that it was found to be nearly impracticable, and recourse was very seldom had to it. It is scarce to be doubted, that the commissioners to revise the statutes intended to supersede it and the Act of 1705 together. The primary use of the commission was to consolidate statutes in *pari materia*, and make one consistent system of the whole of them. Yet it was held in Pennington *v*. Bowman, 10 *Watts* 283, that the Act of 1705 is not repealed. But whether the Act of 1806 be in force or not, the award in this case is not in conformity to it, because the arbitrators were not sworn, though the oath had not been dispensed with, and because there were no witnesses to the submission, nor was there proof of it: White *v*. Shriver, 2 *Watts* 471. It is not pretended, however, that the proceeding was founded on it.

The Act of 1836, which was obviously intended to supply all the statutes which preceded it, has regard expressly to controversies which do not involve title to land, and consequently not to partition, which is a real action.

So far, the objection to the proceedings is negative; but there are provisions in analogous statutes which seem to imply a prohibition of it.

The writ of partition is judicial: *Allnatt* 70. It is, in fact, an execution; and the fountain of power to execute the judgment of a court, is the court itself; and this power has constantly been employed by the legislature. The writ of inquisition in the Common Pleas, is the exclusive source of the inquest's authority, which depends not on the consent of the parties, but on the law. The statute prescribes it as the means of execution, and the law knows no other. Had the legislature intended to let the parties substitute their own contrivance for it, provision would have been made for it, as it was for partition in the Orphans' Court by the Act of 1832. That Act shows, that though the legislature thought such a provision a convenient part of a new system, it was too incongruous to be worked into an old one. It was thought to require a

[Bellas *v.* Dewart.]

statute to dispense with auditors in account render; or to sanction an agreement to continue the lien of a judgment without a *scire facias;* or to waive an inquisition of condemnation to found a sale of land on a *fieri facias.* These and other provisions show that the legislature did not suppose the process of the law could be set aside without its authority.

And why should parties be allowed, for the gratification of a fancy, to introduce into an action a hybridous cross—neither fish nor flesh—between an award and an inquisition? If they are actuated by a desire to save the expense of an inquest, why enter an action at all? Partition may be made by arbitration: *Allnatt* 19; and though the award does not pass the title at law, equity decrees a conveyance. Even did not our chancery powers reach that far, each party would have an equitable title equally available. What sanction could the judgment of a common law court add to it? None. Yet the object of the parties here seems to have been merely to procure it. It was not worth their while to resort to the Common Pleas to introduce a strange and incongruous proceeding, with no other effect than to raise doubts and create difficulties. Should the legislature think it a beneficial one, they can legitimate it; but the legitimation of it belongs to them, not to the courts or the parties.

. Judgment affirmed.

Rogers, J., and Coulter, J., dissented.