## Bingham's Trustees *versus* Guthrie.

1. In a suit pending in 1850, in the Common Pleas, a rule was entered on the part of the plaintiffs for the appointment of arbitrators, who were subsequently chosen, and met and adjourned.   During the adjournment, a written agreement, entitled in the cause pending, was made by the attorneys at law of the parties, for the submission of all matters in variance between the parties, *of every nature and kind*, without regard to the form of action or pleadings, to the arbitrators in the cause pending, or to others legally appointed in their stead; and providing that the award shall be "final and conclusive," and that " the parties waive the right of appeal and of inquisition upon real estate."

An award was subsequently made, in which it was stated that the arbitrators met, and, "after hearing the parties, their proofs and allegations, do find for defendant $18,000 with costs."

An appeal was entered on the part of the plaintiffs, and exceptions to the award were filed, but in none of them was a want of authority in the attorneys to make the submission alleged.   The exceptions were dismissed and the appeal was quashed:

It was *held*, that this was a proceeding under the compulsory arbitration act of 1836; that its nature was not changed by the enlarged submission; and that a waiver of the right of appeal was not incompatible with the compulsory Arbitration Act of 1836.

[Bingham's Trustees *v.* Guthrie.]

2. Where a want of authority in an attorney at law to make a submission is alleged, the submission should be revoked by the party, or an application made to the Court to set it aside. If the party goes to trial and takes the chance of an award, he is bound by the submission.

3. If exceptions to the award be filed, in none of which is a want of authority in the attorney to make the submission alleged, it is too late to make it for the first time in this Court on a writ of error.

4. The submission in this case was not beyond the authority of counsel.

5. This Court will not consider exceptions to the merits of the case, which were made in the Court below and overruled.

ERROR to the Common Pleas of *Clarion county.*

This was an action of *assumpsit* by Joseph R. Ingersoll and others, trustees of the estate of William Bingham, deceased, *v.* James W. Guthrie. It was brought on 20th February, 1850. March 14, 1850, a *narr.* was filed containing the common counts; and on the same day, on the part of the plaintiffs, a rule was entered for the choosing of arbitrators.

At the time appointed three arbitrators were chosen, who were to meet on 25th April, 1850. The arbitrators met and adjourned to meet again on the 26th April; and then being qualified, adjourned to meet on 6th June, 1850. During the period of adjournment the agreement recited in the opinion of WOODWARD, J., was entered into.

The award was as follows:

"June 25, 1850. Arbitrators met at the Court House in Clarion, and continued from day to day, and after hearing the parties, their proofs and allegations, do find for defendant eighteen thousand dollars, with costs."

Signed by the arbitrators.

The award was filed July 5, 1850.

On 18th July, 1850, eighteen exceptions to the award were filed, and an appeal was entered.

The paper-book containing the exceptions was not received, but it was alleged, on the part of defendant, that in the exceptions no misbehavior on the part of the arbitrators was alleged, or that they committed any fraud; that there was no exception that the plaintiffs were not present during the hearing before the arbitrators; nor that the submission of the 22d May, 1850, was not the act or agreement of the parties, or that the attorneys who signed it had not authority to sign it. Also that there was no allegation or proof in the Court below that the general agent of the trustees had no authority to make an agreement of the kind.

It was further alleged, that the attorneys who signed the agreement filed the exceptions, but did not allege any want of authority on their part.

The exceptions were dismissed by the Court below, and the appeal was quashed.

[Bingham's Trustees *v.* Guthrie.]

See the opinion of WOODWARD, J., for some of the assignments of error.

*Purviance* and *Foster* were for plaintiffs in error.—As to the powers of an attorney, and that the usual authority possessed by them was exceeded in the present case, reference was made to 15 *Vermont* 314 ; 1 *Pa. Rep.* 267 ; 7 *Barr* 196 ; 5 *Cowen* 35 : 1 *Greenleaf's Ev. par.* 186 ; 7 *Cranch* 452 ; 14 *Ser. & R.* 307.

*Hepburn* and *Williams*, for defendant in error.—There is nothing on the record to show any defect of authority in the counsel who made the submission ; and any defect existing in it was waived by the acquiescence of the plaintiffs and the omission to take advantage of it until after the return and confirmation of the award : 14 *Ser. & R.* 310 ; 3 *Barr* 449 ; 9 *Barr* 487 ; *Id.* 100 ; 8 *Ser. & R.* 9 ; 6 *Cowen* 386 ; 16 *Ser. & R.* 368 ; 3 *W. & Ser.* 426.

That the power of the attorneys was sufficient to authorize the submission, reference was made to 9 *Barr* 101, Wilson *v.* Young ; 2 *Harris* 398, Babb *v.* Stromberg ; 1 *Harris* 58, Grier *v.* Bilger.

The opinion of the Court was delivered by

WOODWARD, J.—Putting aside many irrelevant matters which have been thrown upon this cause, I come at once to the only questions reviewable in a Court of error, and which are raised by the assignments of error.

Three errors are assigned, of which the first and the third shall be considered together.

The first is, that the Court erred in deciding the proceedings to be under the compulsory arbitration law.

The third is, the Court erred in quashing the appeal.

I have not brought these assignments into juxtaposition for the purpose of making them answer each other, though it is apparent one or the other must be bad—both cannot be true. If the Court *erred* in holding that the proceedings were under the compulsory arbitration law, then they did not err in quashing the appeal, for no other arbitration law gives an appeal. For the same reason, if they erred in quashing the appeal, they must have been right in holding it an arbitration under the compulsory arbitration law.

But this is mere criticism.

From an inspection of the record there can be no doubt this arbitration had its origin in those sections of the Act of 16th June, 1836, which relate to compulsory arbitration. An action of *assumpsit* was pending in the Common Pleas. The plaintiffs had filed their *narr.* when they entered the rule declaring their determination to refer the cause to arbitrators. The parties met in the prothonotary's office, chose the arbitrators, and fixed the time and place of their meeting. All this was in strict accordance with the

compulsory arbitration law. The hearing having been adjourned to the 22d May, 1850, the record reads: "And now, to wit, May 22, 1850, cause continued by consent of parties till June 25, 1850, and award of arbitrators to be final and conclusive (*vide* agreement filed May 29, 1850)." That agreement (to treat it as part of the record) is in these words:

| | |
|---|---|
| Bingham's Trustees<br>*v.*<br>James W. Guthrie. | In the Court of Common Pleas of Clarion county. No. 16, of May Term, 1850. Now depending before Joseph Cochran, James B. Lawson, and Isaac Jones. |

And now, May 22, 1850, it is hereby agreed between the parties to the above cause as follows, viz. :—That all matters in variance between the parties of every nature and kind, without regard to the form of action or pleadings may be submitted by the parties, or either of them, to the arbitrators chosen in the cause, or to others legally appointed in their stead and tried by them, and that their award, or the award of a majority of them, shall be binding, final, and conclusive, between the parties. The parties waive the right of appeal, and of inquisition upon real estate. The cause to stand adjourned to 25th day of June next.

Geo. W. Lathy,
James Campbell,    } Att'ys for pl'ffs.
Thomas Sutton,    Att'y for def'nt.

After this the parties met before the arbitrators and tried the cause, which resulted in an award for the defendant, from which the plaintiffs appealed.

They also filed exceptions, which the Court dismissed, quashed the appeal, and, it is to be presumed, entered judgment on the award, though that does not distinctly appear of record.

Did the agreement of 22d May, 1850, so change the nature of this proceeding as to make it error in the Court to receive and file the award as a judgment in the pending action?

The agreement is entitled of this suit, and recites that it is pending before arbitrators. It was filed of record in this suit. It had two objects in view. 1st. To enlarge the jurisdiction of the arbitrators. According to the statute and the rule entered under it, *the submission* was of "all matters in variance between the parties in this cause." This submission was limited by the rules of pleading and of evidence. By the agreement it was enlarged to embrace "all matters in variance between the parties of every nature and kind, without regard to the form of action or pleadings."

2d. The other object of the agreement was to take away the right of appeal. By the statute either party might appeal from the award within twenty days after it was filed. By the agree-

2 N

[Bingham's Trustees *v.* Guthrie.]

ment the parties waive this right of appeal as well as of inquisition, and make the award "binding, final, and conclusive."

Were these purposes incompatible with the compulsory arbitration law? There is nothing in the Act of Assembly to make them so. Arbitrators cannot assume jurisdiction beyond the boundaries of the cause referred to them, and if they blunder into matters outside of the submission, their award is void as to such excess, but a submission under the statute enlarged by agreement of parties is opposed to nothing in the statute.

True, the Acts of 1705 and 1806, if they are not repealed by the Act of 1836, and if they are, the first seven sections of the Act of 1836 provide for modes of arbitration by the concurrence of the parties litigant. Such also is arbitration at common law. In these cases the jurisdiction of the arbitrators is derived from the consent of the parties, whilst the peculiarity of the compulsory mode is that it originates in the will of one of the parties. He forces arbitration on his adversary without regard to his wishes, and hence it is called compulsory arbitration. But when the forum is fixed, its character is determined. It has been called into being by the agreement and concurrence of the parties, and all its proceedings are subject to the provisions of law which relate to such arbitration, or it has been established by one of the parties acting through the provisions of law that relate to compulsory arbitration. That is the latest point of time—the establishment of the tribunal—to which we can refer in determining its nature. Then we look at the proceedings which led to it, and determine whether it was a reference at common law under our old statutes, under the provisions of the Act of 1836 for voluntary arbitration, or under the provisions of the same act for compulsory arbitration. The jurisdiction has then attached, and however it may be enlarged or narrowed by the subsequent consent of the parties, the *nature* of the arbitration is not changed.

Upon these principles it is easy to say the Court were right in deciding this to be a proceeding under the compulsory arbitration law. It could be nothing else, for *concurrence* was wholly wanting in its inception; and, down to the adjournment of 22d May, 1850, there was not a feature to distinguish it from any other compulsory arbitration.

But if an arbitration under the compulsory law, we have the right of appeal, say the plaintiffs. You had the right of appeal when you began, and you had the right to an award on the matters in controversy in this suit, but you have surrendered them in consideration of your adversary's surrender of the same rights. There can be no reason assigned for releasing parties from such an agreement that would not dissolve any other. And no agreement can be enforced if such an one may be violated. Similar stipulations have been enforced in numerous cases: Mussina *v.* Hertzog,

[Bingham's Trustees v. Guthrie.]

5 *Binney* 387; Andrews *v.* Lee, 3 *Penn. Rep.* 99; Rogers *v.* Playford, 2 *Jones* 185.

Arbitrators are a domestic tribunal often preferred by parties, and in many cases better calculated by their habits of procedure to do them justice than Courts and juries. The policy in Pennsylvania has been to encourage arbitration, and Courts have inclined to a liberal construction of the Acts of Assembly which relate to them. It is moreover to the public interest that an end be put to litigation, and that multiplicity of suits be discouraged. When, therefore, parties come before arbitrators chosen to decide a particular controversy in a pending action, see the men who are to be their judges and jurors, and voluntarily agree to submit *all* matters in controversy between them to be passed upon in that action, and especially, when they relieve the Court from all future embarrassment arising out of the pleadings, by mutually giving up the right of appeal, all interests both public and private, and all principles both of reason and law, concur in sanctioning their act and terminating their discords.

In applying the award to the action pending, the Court went not so far as was done with the sanction of this Court in Gallup *v.* Reynolds, 8 *Watts* 424. There, an award not made under any statute was applied to a judgment in the Common Pleas, and execution awarded on that judgment for the amount of the award. The Court proceeded in that case on the agreement of the parties, and, for the purpose of ending their strifes, held them to the law they had made for themselves. The Court below were in no error in doing likewise in the case before us.

The second error assigned is, that "the Court erred in deciding that the powers of an attorney extended to the submission of other matters than those for which the action was brought."

If we were to confine our eyes to the record, it would appear that the submission was enlarged by the *parties*, and not by their attorneys. If we look at the agreement of 22d May, 1850, that speaks also of the parties, "it is hereby agreed between the parties in the above case," &c.

But grant the fair presumption to be, from the signature of the paper, that the attorneys and not the parties made the agreement, and let it be granted also, that it was beyond the scope of professional authority, what then?

A submission, whether by deed, parol, or rule of Court, like any other naked authority, is countermandable before execution of it, though expressed to be irrevocable: Vynior's case, 8 *Rep.* 162; Power *v.* Power, 7 *Watts* 213. If a party is dissatisfied with the agreement of his attorney, he should apply to the Court in which the agreement is entered, to set it aside: Huston *v.* Mitchell, 14 *Ser. & R.* 307; Miller *v.* Creswell, 3 *Barr* 451; Babb *v.* Stromberg, 2 *Harris* 399.

[Bingham's Trustees *v.* Guthrie.]

Now, instead of revoking the submission or applying to the Court to set it aside, the plaintiffs went to trial under the enlarged submission, and took their chance for an award in their favor. When found to be against them they filed fourteen exceptions to it in Court, no one of which contained a suggestion of want of authority in their attorneys to make the submission, and now it appears on the record for the first time as an assignment of error. It cannot be entertained without disregarding the whole current of decisions: Herman *v.* Freeman, 8 *Ser. & R.* 9; Vankirk *v.* McKee, 9 *Barr* 100; Christman *v.* Mason, *Id.* 487; Rogers *v.* Playford, 2 *Jones* 181.

But it cannot, with propriety, be conceded that the submission was beyond the authority of counsel. The authorities are not so, and therefore, even if the objection now taken for the first, were in time, it could not avail the plaintiffs. Besides the cases referred to in the opinion of the Court of Common Pleas, and several already cited in this opinion, I refer to Wilson *v.* Young, 9 *Barr* 101; Grier *v.* Bilger, 1 *Harris* 58.

Having thus disposed of the questions raised on this record, I shall not discuss the exceptions to the award, overruled in the Court below, nor the powers of attorney mentioned in the argument, and much less the evidence on which the arbitrators proceeded. It is possible the award did injustice to the plaintiffs. I confess to a lurking suspicion to that effect, but, to adopt the language of Judge Bell in Rogers *v.* Playford, if injustice has been done, it is the result of a course of investigation and power of determination to which the plaintiffs voluntarily submitted themselves.

Judgment affirmed.