If the first suit against the defendant Clarke for the non-delivery of the salt was properly brought in the name of the owners, it must be a bar to the present action. This presents the only important question in the case.
It is a general rule that a bailee having a special property and the general owner may either of them sustain an action for the conversion of or an injury to property in which they are interested. The right to sue is indespensable to enable each to protect his particular interest, but as the *Page 354 
law will not suffer a defendant to be twice harassed for the same cause, only one suit can be brought and it will be a bar to every other. (1 Bos. Pul., 47; 7 Cowen, 328; 1 M. Selwyn,
147.) Green by his contract with the owners undertook to transport this merchandise to Lower Sandusky, and he thereby acquired such a special interest in the property as would enable him to discharge that duty and to earn the stipulated compensation, and no other. If the defendants had lost or converted the property, he could have recovered its value at the port of destination, less the freight to which they were entitled under their agreement; the whole of which, after deducting the price for transportation to be paid by the owners, he would hold in trust for them. If the action had been brought by the owners, the measure of damages would have been the value of the salt at Lower Sandusky, less the cost of transportation according to the contract between Green and the defendants. The difference, however, between the price to be paid by Green and that which he was to receive from the owners for the same services, would in like manner be held by them in trust for the plaintiff. (Griffith v. Ingledew, 6 Serg. Rawle, 429; 8 Watts,
424; Angel on Carriers, § 492, 491.) The former suit was brought by the owners against one of these defendants in case and trover, and the contract of the defendants then and now in evidence was introduced to raise the duty on their part as carriers, the breach of which constituted the gravamen of the action. The judge who presided at that trial ruled that no action would lie in behalf of the owners. In this he erred, if the general principle to which I have adverted is correctly stated, or the authorities cited in its support are evidence of the law. The counsel for the respondent insists with justice, that the decision of the learned judge was upon the merits. It was therefore the duty of the then plaintiffs to have excepted and reversed it. The idea that one action may be maintained on the duty arising upon a contract and, when that *Page 355 
fails, another upon the contract itself, is a refinement sustained neither by principle or authority.
The present plaintiff would have had the benefit of that suit as we have seen, had it succeeded. If the release which he then received from the owners was, as is now claimed (without evidence and against all probability), for a full consideration, paid or secured by him, then the trial from the time it was executed must have proceeded for his exclusive benefit, and there is every reason why he should be bound by the result. If it was given without consideration, as the owners were concluded by the first suit, all that he lost by the verdict upon his own showing in that case, or should be permitted to recover in this, was the difference between what he was to receive and pay for the freight of the salt, amounting to less than seventy-five dollars. He was allowed upon the first trial in this cause to recover the full value of the property, which his counsel now claims to be the true measure of damages.
But in the second place the owners, the plaintiffs in the former action, had not only an interest in the property but, at their election, an interest in the contract which is now in question and was there attempted to be enforced. The general ownership draws to itself every contract made with a carrier for the transportation of property and the right to sue for a breach of it, resulting in an injury to the right of property, except where the person with whom the agreement is made has a special interest in the subject of it, when the action can be maintained either by him or the general owner. The interference of third persons with the property of another, for the purpose supposed, if justifiable, must be actually or presumptively authorized by the owner. It is immaterial whether the goods are directed to be sent by a particular carrier (8 Term, 330), or generally (5Bos. Pul., 584), or whether the consignees gave any orders, or even knew of the shipment. (1 John. R., 215; 6 Binney,
120; 6 Serg. Rawle, 429.) In Davis v. James (5 Burr.,
2680). *Page 356 
the consignors were the owners and plaintiffs; and in Freeman
v. Birch (1 Nev. Man., 420), the decision was put upon the ground of a special property in the laundress with whom the contract was made. (Angel on Car., § 492.) Indeed, it was admitted that the proposition above stated applied where the action was founded on the bailment or on an implied contract, but not where, as in this case, the sub-contract was express. But to create the relation of bailor and bailee, between the owner and the carrier, there must always be an employment by the authority of the former. Without it, the delivery or transportation of the property, either or both, would amount to a conversion. If the owners in this case, at their election, could affirm the relation established by the act of Green between them and the defendants, it must be immaterial whether that relation and the duty and the promise of the carrier are evidenced by the same instrument, or inferred from facts separately established. There is no more difficulty in ratifying an express, than an implied contract. (2Greenleaf Ev., § 210; 6 Binney, 120; Angel on Carriers, § 494.) And in 6 Howard U.S.R., 344, the principle was expressly affirmed in reference to an express contract, made without the knowledge of the owner.
We are told that there is no mutuality; that the owner may elect to enforce the sub-contract, but is not otherwise bound by its provisions. The answer is, that every carrier is bound to know what these defendants were distinctly informed of by their bill of lading, that the property with which they are intrusted has an owner, and that their right to the possession and control of it must be derived from him. The defendants accordingly were driven to prove both contracts on the trial in the former suit, and they had the benefit of both when the judge ruled in that suit that trover could not be maintained by the owners against them. *Page 357 
If the effect of these contracts was to constitute them bailees of the property without the knowledge of the owners, there is no injustice in their assuming the responsibilites of that relation, when a breach of their contract would be followed by the same consequences, whether enforced by Green or by Richmond Co.
The defendants claimed under and had the benefit of both contracts on the first trial. The agreement then proved between the owners and Green was express. The quantity to be transported, the port of reception and of delivery and the compensation were each of them fixed by the express stipulation of the parties. In this particular the facts are not changed by the new evidence. The case before us is therefore in every substantial element the same that has been decided twice by the supreme court, and by this court on review. These decisions should, I think, be confirmed: 1. Because, if Green retained a special interest in the property in question, after his contract with the defendants, the first action was properly brought in the names of the owners, predicated upon the rights of property, by which both bailor and bailee would be concluded; 2. Because if Green, as between himself and the defendants, had divested himself of that interest by an independent contract, he could not change his own or the relation of the owners to the property without assuming to act for the latter, to the extent of that change; and they were therefore at liberty, at their election, to consider the defendants as the mere agents of Green and hold him responsible for their misconduct, or to affirm the contract made with them and bring their action as for a tort, founded on the duty raised by the contract, or on the contract itself. In either view the first suit for the same cause of action, supported by similar evidence, tried and determined on the merits, is a bar to the present.
The judgment of the supreme court should be affirmed. *Page 358 
All the judges concurred in affirming the judgment on the ground that the former suit was a bar. The question, as to whether the plaintiff originally could have maintained the action, was not passed upon by the court.
Judgment affirmed.