# LOVERING *vs.* LOVERING.

In a lease, the words, "let and lease," do not make a covenant in law, or implied covenant.

In a written agreement under seal, any words showing the intent of the parties to do or not to do a certain thing, will make an express covenant.

In a lease it was stated that the lessor " let and leased" to the lessee two acres of land, &c., "and as much firewood as she wants off the hundred acres, a part of which she has conveyed to me, and oxen to haul it, and do all her other ox-work."—*Held*, that these words made an express covenant that the lessee should have as much firewood as she should desire, from the land referred to, and that the lessor would provide oxen to haul it.

If a party make a covenant, and then disable himself from performing it, the covenant will be broken.

A lessor covenanted that the lessee should have as much firewood as she should desire from a certain tract of land, and then cut most of the wood thereon, and converted it to his own use.—*Held*, that such conduct was a breach of his covenant.

If one party be ill, and unable to testify at a hearing before an auditor, a refusal by the auditor to permit the other party to testify, will be a proper exercise of his discretionary power, and will not be a cause for recommitting or rejecting the report.

COVENANT. On the 13th day of August, 1806, the defendant leased to the plaintiff certain premises for the term of her natural life. The language used by the lessor was as follows: " I have let and leased, and by these presents do let and lease unto her, the said Mary Lovering, for and during the full term of her natural life, two acres of land, &c., and as much firewood as she wants off the hundred acres, a part of which she conveyed to me, and oxen to haul it, and do all her other ox-work," to have and to hold the premises, " according to the true intent and meaning, as before written, without the least hindrance, &c. from me or my heirs, or any other person."

The plaintiff assigned six breaches of the covenants in the lease, in her declaration, but introduced evidence to sustain the second and third specifications only, which were as follow :

2d, " that the defendant did not permit the plaintiff to take firewood from the said hundred acres of land, as she reasonably wanted the same."

3d, " that the defendant did not furnish the plaintiff oxen to haul her fire-wood, and do her other ox-work."

The defendant pleaded *non infregit conventionem.* In relation to the second breach, it appeared that at the time of the execution of the lease there was considerable wood growing upon the hundred acres, sufficient to supply two or three fires,—that soon afterwards the defendant cut off and converted to his own use the principal part of the wood, so that there was not enough left to supply one fire,—that the plaintiff had most of her wood from the lands of the de-

fendant, but that for some years she was obliged to procure wood from her own land.

As to the third breach, it appeared that the plaintiff generally had the use of the defendant's oxen to haul her wood, and to do her other work, but that she did not have them on several occasions when she applied for them, and had been obliged to hire the oxen of one of her neighbors.

The action was referred to an auditor, in whose report the foregoing facts were stated. He also reported that the defendant was offered as a witness in chief by his counsel. The plaintiff's counsel objected to his testifying, on the ground that the plaintiff was sick and unable to be examined. The auditor being of opinion that it was discretionary with him whether he should admit or exclude the witness, under the circumstances of the case, refused to permit him to testify.

If, upon the above facts, the plaintiff should be entitled to recover, the auditor reported that she should recover the sum of twenty-five dollars, as damages for the second breach, and the sum of five dollars as damages for the third breach; and the questions arising upon the case were transferred to this court for determination.

*James Bell*, for the plaintiff. Admitting, for the sake of argument, that the words, " let, lease or demise," do not raise an implied covenant in a lease for life, but only in a lease for years, the lease still contains an express covenant that the lessee shall hold the premises during her life, without any hindrance from the lessor, or any other person. *Ellis* vs. *Welch*, 6 *Mass.* 246. Any words, expressing an agreement, will constitute a covenant on which an action will lie, though they may be in the form of a proviso or condition, and however informal they may be, and no set form of words is required. 3 *Dane Abr.* 557, 558 ; 3 *Cruise* 65, *title* 32, *ch. 5* ; *Shep. Touch.* 162, (*n ;*) 2 *Com. Dig.* 237 ; 3 *Johns.* 44 ; 10 *Johns.* 484 ; 1 *Bac. Abr., Covenant,* (*A*) *p.* 527.

This case properly falls within that class of cases where

covenants are implied from the objects of the contract, or " where implied covenants are raised by implication of law from express covenants, when, without such legal intendment, the express covenants would be cramped in their operation, or the advantages meant to be enjoyed under them in a manner defeated." *Platt on Covenants* 55. Upon this principle were the decisions in *Seddon* vs. *Senate,* 13 *East* 63; *Shrewsbury* vs. *Gould,* 2 *B. & A.* 487; *Webb* vs. *Plumer,* 2 *B. & A.* 746, and *Randall* vs. *Lynch,* 12 *East* 179.

We place our right to recover, not upon the force of the expressions "let" and "lease," (which are not apt words for the grant of a right or license to take firewood from land, but which are enough, notwithstanding, clearly to indicate the intention of the parties,) but upon the agreement collected from the instrument, that the plaintiff should have the wood. We rely, not on a covenant in law, resulting from the use of certain technical words, but upon an implied covenant, which may arise from any language in a sealed instrument, showing an agreement.

But the words "let and lease" imply a covenant in law, as well as the word "demise," or the word "grant," as they equally import a right in the grantor to create the term. No distinction is made between them in the authorities. The word " demise" is, perhaps, more frequently referred to, but only as an example. The doctrine is often stated in this way: " If a man 'lease' to me, &c., that is a covenant." *Bac. Abr., Covenant,* (*B.*) No stress is laid on the word " demise." The words " to farm let," imply a covenant. 1 *Esp. N. P.* 267. If a man " assign" money that should be allowed to him by order of a foreign state, though it cannot be assigned, yet this will amount to a covenant that he shall have the money. *Bac. Abr., Covenant,* (*B.;*) *Powell on Con.* 235. It is not even necessary that the words from which the covenant is implied should be those of the lessor, or party executing the agreement, but a covenant may be implied on the part of the party accepting. *Bac. Ab.,*

*Covenant,* (*B,*) 530; *Esp. N. P.* 267; 1 *Powell on Con.* 242; 1 *Fonbl. Eq.* 375. The words are to be taken most strongly against the covenantor. 1 *Bac. Abr.* 539; 1 *Esp. N. P.* 270; and according to their spirit and intent—*Quackenboss* vs. *Lansing,* 6 *Johns.* 49.

The defendant is liable on his covenant relating to the firewood, because he has disabled himself from performing it. *Platt on Cov.* 58, 59; *Bac. Abr., Covenant,* (*B,*) *note;* *Maine's Case,* 5 *Rep.* 21, 22; 1 *Esp.* 430; 2 *Esp.* 522; *Cole's Case, Salk.* 196.

*H. F. French,* for the defendant. As to the second breach, the provision in the lease that the plaintiff shall have as much firewood as she may want from the hundred acres, is merely a covenant that she shall occupy the hundred acres, and a breach of it is only a breach of the express covenant that the lessee shall quietly enjoy, &c. The lease contains no such covenant as is alleged in the writ, and a covenant cannot be implied. 9 *N. H. Rep.* 221. It does not appear that the defendant ever refused to permit the plaintiff to take off the firewood. If there were any breach, it was that the defendant took away all the firewood himself, and such should have been the allegation. And the facts stated by the auditor do not show any breach. It does not appear that she did not consent that the wood should be taken off.

As to the breach relating to the oxen, the plaintiff could not expect that they were always to be yoked and ready for use. The defendant did not refuse to furnish the oxen for her. It appears only that she did not have them.

GILCHRIST, J. The first inquiry in this case of course is, whether there are in the lease any such covenants as those which in the declaration the defendant is alleged to have broken.

The instrument "lets and leases" to the plaintiff two acres of land, as much firewood as she wants from a certain

hundred acres of land, and oxen to haul it, and do all her other ox-work, and "the premises above described" are to be "held according to the true intent and meaning as before written," "without the least hindrance," &c. These are all the expressions in the lease which it is necessary to examine in order to determine this question.

Covenants have been divided into express and implied covenants, and the latter depend for their existence upon the intendment and construction of law. There are some words which of themselves do not import an express covenant, yet being made use of in certain contracts have a similar operation, and are called covenants in law, or implied covenants. *Bac. Abr., Covenant,* (*B.*) They are implied by the law, from the use of certain words having a known legal operation in the creation of an estate. All covenants between lessor and lessee are either covenants in law, or express covenants. *Vaughan's Reports* 118 ; *Co. Litt.* 139, *b.* Illustrations of this class are to be found in the effect of the words *grant, demise,* &c., from which the law implies a covenant that the lessee shall hold and enjoy the term against all lawful incumbrances. *Spencer's Case,* 5 *Co.* 17 *a ;* 18 *a ; Clarke* vs. *Samson,* 1 *Vesey* 100 ; *Andrew's Case, Cro. Eliz.* 214 ; *Merrill* vs. *Frame,* 4 *Taunt.* 609 ; *Shep. Touch.* 160 ; *Com. Dig., Covenant,* (*A* 4.) But no case is to be found where the words "let and lease" imply a covenant. The case cited by the counsel for the plaintiff from 1 *Esp.* 327, is *Andrew's Case, Cro. Eliz.* 214, where the words of the lease were " *concessi et ad firmam tradidi.*" The implied covenant in that case depended not upon the words *ad firmam tradidi,* but on the word *concessi.*

There is, then, in the lease no implied covenant, or covenant in law, and the question arises whether there be any express covenant.

No particular form of words is necessary to the creation of a covenant, but any words will be sufficient which show the intention of the parties. *Cruise's Dig., Title Deed,*

*ch.* 25, § 5. Any words in a deed which show an intention to do any thing, make a covenant. *Com. Dig.*, *Covenant*, (*A* 2;) *Randall* vs. *Lynch*, 12 *East* 179. It is defined to be an agreement by deed in writing, sealed and delivered. *Shep. Touch.* 160. And being parts of a deed, covenants are subject to the general rules established for the construction of deeds. They are to be taken most strongly against the covenantor, and according to the intent of the parties, and are to be construed *ut res magis valeat, quam pereat. Shep. T.* 166. Now, where the covenant does not flow as a legal consequence from the use of certain words, it is not an implied covenant. We must, then, inquire what is the meaning of the language used, and the ease or difficulty of doing this will be in proportion to the clearness or obscurity of the expressions. But as soon as the meaning of the parties is ascertained, it is immaterial what were the difficulties which stood in the way of determining it. The operation of the covenant is the same, whether the language be precise and express, or whether it be matter of inference and construction. If the parties agreed to do or not to do a certain thing, the agreement is an express covenant, whether they have used the word *covenant,* or other words from which their meaning is to be inferred. It is not the less an express covenant, because the meaning is obscurely expressed, and therefore discovered with difficulty.

Among the numerous cases to be found in the books showing the manner in which the language of the parties has been construed so as to constitute a covenant, is that of *Pordage* vs. *Cole,* 1 *Saund.* 319. It was there agreed between A and B, that B should pay A a sum of money for his lands on a particular day, and it was held that these words amounted to a covenant by A to convey the land. In *Randall* vs. *Lynch,* 12 *East* 179, it was held that if parties agreed that it should be lawful for one to hold the other's property for a certain time, that would, emphatically, be a covenant that he should not detain it for a longer time. A

covenant by a lessee that he would at all times and seasons of burning lime, supply the lessor with lime at a stipulated price, was held to be a covenant that he would burn lime at all such seasons. *Shrewsbury* vs. *Gould,* 2 *B. & A.* 487. A covenant in a lease that the tenant will fold his flock which he shall keep, &c., is binding on him to keep a flock and fold it on the premises. *Webb* vs. *Plumer,* 2 *B. & A.* 746.

What, then, is " the true intent and meaning" of this contract ?

The defendant lets and leases to the plaintiff as much firewood as she wants, to be taken from a certain piece of land, and she is to hold " the premises" without hindrance, and this is done by an instrument under seal. What was the intention of the parties is very obvious. It is as plain that the defendant agreed that the plaintiff should have from the hundred acres as much firewood as she should desire, as if these expressions had been used. It is equally clear that he has agreed to provide her with oxen to haul her firewood, and do all her other ox-work. It is true that he lets and leases the firewood, and lets and leases the oxen, and that he has not used the best and most appropriate language to express his meaning. A person of more education would probably have used different and better terms than these. But it is a question of intent and meaning, and not of style, which we are to determine. And the meaning we think so plain, that discussing the language and weighing it further would tend as much to obscure as to illustrate it. Here is, then, an express covenant that the plaintiff should have as much firewood as she should desire from these hundred acres, and that he would provide her with oxen to haul it.

There is sufficient evidence that both the covenants were broken.. The defendant cut off the wood, so that there was not enough left to supply one fire, and the plaintiff was obliged to procure fuel from her own land. And on various occasions she could not procure the defendant's oxen when she applied for them, and was forced to hire others. The de-

fendant had disabled himself from performing his covenant. If a lessor do any act which destroys or defeats the effect of his grant, covenant will lie against him. *Com. Dig., Covenant, (A 4.)* So if he act contrary to the intent of the covenant. *Ibid., Covenant, (E.)* If he have disabled himself to perform his covenant, such conduct will be a breach. *Com. Dig., Condition, (M 2.)* In *Seddon* vs. *Senate,* 13 *East* 63, the defendant assigned by deed all his interest in the making and vending of a certain medicine, to the plaintiff, and afterwards disturbed him in the enjoyment of it, by making and selling it on his own account, and it was held that this was in breach of his covenant.

The auditor was undoubtedly right in refusing to permit the defendant to testify. If it should appear that injustice had probably been done by admitting one of the parties to testify, the court might set aside the report, or recommit it, as the case might require. *Fuller* vs. *Little,* 7 *N. H. Rep.* 539. The testimony of the party is admissible in the discretion of the auditor. *Mann* vs. *Locke,* 11 *N. H. Rep.* 248. The exercise of this discretion is of course subject to the supervision of the court. In this case, the plaintiff was ill, and unable to be examined, and the parties would not have stood on equal grounds if the statement of one had been received and weighed as evidence, without that of the other to contradict or explain it.

*Judgment on the report.*