## SMITH & LOUGEE *v*. SMITH & BANNISTER.

Where the plaintiffs were merchants, doing business in Boston, but took orders for goods at the store of the defendants, in this State, and the goods were afterwards separated from the main stock, according to the orders, and sent to the depot, in Boston, directed to the defendants, in this State—*Held*, that the sale was in Massachusetts, not being complete until the delivery of the goods at the depot.

If persons hold themselves out to the world as joint traders, they will be held responsible as partners to third persons, whatever may be the real nature of the connexion, or the agreement under which they act.

If a vendor of goods be ignorant of the existence of a partnership, and sell goods to one member of the firm, and charge them to him, supposing at the time that he is dealing with him only, but the goods are purchased and used for the benefit of the firm, all the partners will be liable.

A promissory note is not payment of a preëxisting debt, unless there be an agreement to that effect between the parties.

In a hearing before an auditor, a party to the suit may be admitted or rejected as a witness, in the discretion of the auditor, subject to the supervision of the court; and a report will not be set aside for such admission or rejection, unless it shall appear that injustice has been done.

Assumpsit, on an account and promissory note.

The case was committed to an auditor, from whose report the following facts appeared:

The plaintiffs' account consisted of nine separate bills, numbered from 1 to 9, inclusive, as follows:

Smith & Lougee *v.* Smith & Bannister.

| 1849, March 24. | Amount of bill No. 1,.......... | $238,15 |
|---|---|---|
| " June 20. | " " " " 2,.............. | 89,25 |
| " July 21. | " " " " 3,............. | 593,25 |
| " Sept. 24. | " " " " 4,............. | 322,24 |
| " Oct. 1. | " " " " 5,............. | 88,90 |
| 1850, March 15. | " " " " 6,............. | 76,70 |
| " July, 29. | " " " " 7,............. | 323,29 |
| " Aug. 6. | " " " " 8,............. | 23,22 |
| 1851, Jan. 14. | " " " " 9,............. | 217,50 |

1,972,50

Upon this account credits were given amounting to   668,49

Leaving a balance of......................... 1,304,01

All the above bills were for liquors, excepting in bill
No. 3,....................................... $75,50
In bill No. 4,................................... 76,09
In bill No. 8,................................... 23,22

Amounting to................. 174,81

The credits were as follows :

| 1849, September 24. | Cash,................... | $100,00 |
|---|---|---|
| 1850, February 4. | Merchandise,.............. | 25,00 |
| " " 12. | Cash,.................... | 100,00 |
| " March 14. | Cash,.................... | 100,00 |
| " " 29. | Merchandise,............... | 12,23 |
| " June 15. | Cash,.................... | 100,00 |
| " July 20. | Cash,.................... | 26,00 |
| " " 20. | Discount,................ | 1,06 |
| " August 6. | Cash,.................... | 100,00 |
| " November 13. | Cash,.................... | 100,00 |
| 1851, February 1. | Cash,.................... | 10,00 |

668,49

Which sum of $1,304,01, the auditor found to be due and owing from the defendants to the plaintiffs, subject to the opinion of the court upon the following statement of facts:

It appeared from the evidence in the case, that the plaintiffs were partners in trade, doing business in Boston. That the defendants were occupying the same store in Manchester, selling groceries and liquors, and holding themselves out as partners; and while they were so connected, the plaintiffs sold and delivered to them the goods mentioned in the foregoing account. That most of the goods so sold consisted of liquors, and it was agreed that the plaintiffs had no license to sell liquors in this State.

It further appeared that one F. W. Brown was a travelling agent or salesman for the plaintiffs; that his business was to travel about the country and solicit orders for goods, which he sent or carried to the plaintiffs in Boston; that no sales were made by the plaintiffs, except at their store in Boston; that while thus employed, he received orders from the defendants for the goods included in the foregoing bills, numbered 1, 3, 4, 5, 6, 7 and 8, at the time of their several dates, and either carried or sent the orders to the plaintiffs, in Boston, who forwarded the goods to the defendants.

It was further proved that Brown had no authority to sell goods, but merely to receive orders and transmit them to the plaintiffs, for their confirmation or rejection. But to the evidence tending to show Brown's authority, the defendants' counsel objected.

The bill of goods of June 20th, 1849, numbered 2, was purchased by Smith, one of the defendants, at the plaintiffs' store, in Boston.

It appeared that, at the time of the sale of the goods mentioned in the bill numbered 9, Charles F. Lougee, one of the plaintiffs, took the order for the same at the store occupied by the defendants, in Manchester, on the 7th of January, 1851; that the same was entered on the plaintiffs' order book, in Boston, on the next day; that there was some

question with the plaintiffs whether they would send the goods or not, but that the goods were sent to the defendants on or about the 14th of the same month, and charged the defendants on the plaintiffs' books.

And the auditor further found that the before-mentioned bills of goods were delivered at the depot, in Boston, marked with the defendants' marks, for Manchester.

The defendants contended that these sales were made in this State, and, as the plaintiffs had no license in this State, the sales, so far as the goods sold were liquors, were illegal, and the price could not be recovered.

It further appeared that the above bills of goods, from No. 1 to No. 8, inclusive, were charged by the plaintiffs on their books to Richard Smith; the plaintiffs, at that time supposing that they were dealing with him alone, but that the goods so charged were carried to the store occupied by the defendants, in Manchester, and there sold; and that the bill No. 9 is the only one which was charged by the plaintiffs, on their books, to both these defendants.

It further appeared that on the 26th day of July, 1850, the plaintiffs settled with the defendant, Smith, according to the following account, to wit:

" To merchandise, as per bills Nos. 1, 2, 3, 4, 5, 6, $1,408,49
By cash, merchandise and discount,...............458,43

1,050,06

Received payment,

SMITH & LOUGEE."

It further appeared that this account was settled by a note for $950, signed by Richard G. Smith, and payable to the plaintiffs, or order, on demand, it being the same note annexed to the plaintiffs' specification in this suit, and which has never been paid, except in part, to wit, the sum of $10, which was indorsed thereon. At the time of the making of the note, there was no agreement that the note should be

received in discharge of the account, and the note has not since then been so treated by the parties, unless the court should so adjudge, on the following statement:

Richard G. Smith has deceased since the commencement of this suit; his estate has been represented as insolvent, and a commissioner appointed. This note, and the amount accruing after, was by the plaintiffs' counsel presented to the commissioner, and by him allowed against Smith's estate. The note and the accounts, numbered 7 and 8, were allowed against the estate of Smith, while the bill, numbered 9, and the costs of the suit, were allowed as claims presented against Smith & Bannister, as appears by the report of the commissioner.

Nathan H. Bannister, the surviving defendant, was offered as a witness in chief, by his counsel. The plaintiffs' counsel objected to his testifying, on the ground that, as the other defendant, Smith, was dead, who had made most of these purchases, and as Frederick Smith, one of these plaintiffs, who appeared from the evidence to have had the most to do with directing the sales, on the part of the plaintiffs, was at the South on account of his health, the parties would not stand on equal grounds, if the statements of this party should be received without that of the others; and it further appearing to the auditor that this witness, from the circumstances of the case, was under more than ordinary inducements to testify in a particular manner, the auditor declined to receive him as a witness, to which the defendants' counsel excepted.

The report was re-committed to the auditor, and the following further facts were stated by him: That the orders for goods received by Brown were received at the defendants' store, in Manchester.

That the plaintiffs had no communication with the defendants, in relation to bill No. 9, after the order was taken by Lougee, until the goods were forwarded to the defendants.

That annexed to the bill of goods, numbered 1, was a letter, of which the following is a copy:

" Dr. Sir,—Above is bill of goods sold you by Mr. Brown and forwarded this day, which we trust arrived safe and proved satisfactory.

Respectfully yours,

SMITH & LOUGEE.

Mr. RICHARD SMITH."

This bill was dated Boston, May 25, 1849.

That Charles F. Lougee, one of the plaintiffs, was called for and put upon the stand by the defendants' counsel, and examined as a witness.

That the defendants' counsel objected to so much of the report as is in the following words, " and it further appearing to the auditor that this witness, from the circumstances of this case, was under more than ordinary inducements to testify in a particular manner," and requested an explanation of the same.

The auditor cannot state in detail the evidence by which he arrived at the conclusion there stated, further than appears upon the facts set forth in the report, except that there were other suits pending for a considerable amount, from the responsibility of which his denial of the alleged partnership, if believed, would have relieved him. The defendants' counsel took the ground, and introduced evidence to prove, that the party offered was in trade on his own account, dealing in groceries alone, while Smith dealt in liquors, each entirely distinct from and independent of the other, and then proposed to prove by the party offered that he was merely a clerk of Smith's, the defendant, now deceased.

To these additions and amendments to the original report proposed by the defendants, the plaintiffs objected, on the ground that they are but a part of the circumstances upon which the several facts stated in the report are founded, and

are matters of evidence which should be passed upon by the
auditor.

The auditor further found that the plaintiffs did not know
that Bannister was a partner until about the time they re-
ceived the order for the bill of goods numbered 9.

The questions arising upon the case were transferred to
this court for determination.

*Perley*, with whom were *Clark & Bell*, for the plaintiffs.

The auditor's report finds that the defendants were part-
ners, and that the goods were sold to them as such ; that the
plaintiffs, when they sold the goods, except the last parcel,
when they charged them to Smith, and when they took his
note, supposed they were dealing with Smith alone, and
were ignorant of the fact that Bannister was a partner. We
say, then,

I.   The plaintiffs are not precluded from claiming against
the partners by anything they have done by way of claiming
of Smith alone.

1st.   Not by charging to Smith, for they were ignorant
that another was, in fact, the purchaser with him. *Everett*
v. *Chapman*, 6 Conn. Rep. 347 ; *Griffith* v. *Buffum*, 22 Vt.
Rep. 181 ; *Reynolds* v. *Cleveland*, 4 Cowen 282.

2d.   Nor by taking Smith's note. This would not dis-
charge the firm, even if the partnership were then known to
the plaintiffs, unless the note were agreed to be received in
payment.   And there is nothing in the case to show that it
was taken in payment.   The auditor finds that it was not
taken in payment, unless on the facts stated the law will
draw that conclusion.   The fact whether the note was
agreed to be received in payment has been submitted to the
auditor, and he has found that it was not so received. *John-
son* v. *Cleaves*, 15 N. H. Rep. 332.

There was no settlement between the defendants, by
which Smith was allowed for the amount of his note to the
plaintiffs. *Brown* v. *Kemley*, 2 B. & P. 518.

But here the partnership was not known to the plaintiffs, when they took the note of Smith, which relieves this point from all doubt. Story on contracts, § 226.

3d. Nor by presenting the claim against the estate. The presentment and allowance of the claim is not payment. And presenting the claim is quite consistent with this demand against the firm; for if Smith has estate to pay the partnership debts, after paying his own, it must be so applied. *Raymond* v. *The Crown and Eagle Mills*, 2 Met. 319.

II. The plaintiffs made no sale of liquor in New Hampshire. After the orders and offers to sell, made in New Hampshire, the goods remained in Boston, without being measured or separated, and could not be taken by the defendants till the plaintiffs assigned them some specific goods. No property passed by means of anything done in this State.

In all instances, except one, the amount of the purchase exceeded thirty dollars, and the bargain was void under our statute, and, of course, there was no sale until the delivery in Boston. Story on Sales, § 502.

III. The auditor has a discretion to admit or refuse the evidence of a party offered by himself, and in this case the discretion was properly exercised. *Lovering* v. *Lovering*, 13 N. H. Rep. 521.

We do not understand the objection made to Brown's authority.

*D. & D. J. Clark*, for the defendants.

EASTMAN, J. Upon the principles laid down in *Wolsey & Bailey & al.*, decided at the present term, (*ante*, p. 217,) the sale of the liquors, which go to make up the principal part of the plaintiffs' claim, took place in Boston. The facts disclosed by the auditor show that, notwithstanding the negotiations which took place in this State, between the defendants and Brown, and also with one of the plain-

tiffs, the goods were not delivered until they were sent to the depot, in Boston, and the sale was not complete till then.

No contract had been made between the parties which the defendants could enforce, and nothing had been done by which they could legally claim and hold the goods until after the delivery at the depot. The quantity contained in the orders had never been separated from the general stock, and the defendants had in no way obtained the possession or the right of possession to the property. *Austin* v. *Craven*, 4 Taunt. 644; *White* v. *Wilks*, 5 Taunt. 176; *Wallace* v. *Breeds*, 13 East. 522; *Lagura* v. *Furnell*, 2 Camp. 240; *Shepley* v. *Davis*, 5 Taunt. 617; *Busk* v. *Davis*, 2 M. & S. 397; *McDonald* v. *Herrett*, 15 Johns. 349; *Barret* v. *Goddard*, 3 Mason 112; *Outwater* v. *Dodge*, 7 Cowen 85.

When the goods were delivered at the depot the sale was complete, and the property immediately vested in the defendants, but not until then. *Danes* v. *Peck*, 8 Term Rep. 330; *Dutton* v. *Solomonson*, 3 Bos. & Pull. 582; *Griffith* v. *Ingledew*, 6 Serg. & Rawle 429; *Ludlows* v. *Bowne & Eddy*, 1 Johns. 15.

As, then, the sale was in Massachusetts, and by the laws of that State was legal there, the price of the goods can be recovered in our courts, upon showing by competent evidence that the defendants were the purchasers.

The fact of the partnership between the defendants appears to be sufficiently found by the auditor. Some of the circumstances and evidence reported, tend to show that they were not in partnership; still the auditor finds that they occupied the same store, selling groceries and liquors, and held themselves out as partners. This finding fixes the fact of partnership. If individuals hold themselves out to the world as joint traders, they will be held responsible as partners to third persons, whatever may be the real nature of their connexion, or the agreement under which they act. 3 Kent's Com. 27; *Dob* v. *Halsey*, 16 Johns. 40; *Purriance*

v. *Mc Clintee,* 6 Serg. & Rawle 259; *Grace* v. *Smith,* 2 W. Black. 998; *Smith* v. *Watson,* 2 Barn. & Cress. 401; *Cheap* v. *Cramond,* 4 Barn. & Adol. 663.

In *Atkins* v. *Hunt,* 14 N. H. Rep. 209, this language is used: " It is not necessary that persons should hold themselves out to the world as partners in order to become liable in that capacity. That is only one mode of charging them, and when that is done, it dispenses with the necessity of proving that they actually signed the articles of partnership."

As the defendants were partners, they were both liable to the plaintiffs, notwithstanding at the time of the sale the plantiffs supposed that they were giving credit to Smith only. In purchasing the goods he was the authorized agent of the copartnership. After the purchase the goods were taken to their store in Manchester, and were there sold. They went for the use and benefit of the firm, and the plaintiffs being ignorant of the existence of the partnership may well sustain an action against those who were in truth the purchasers, and who had the property and its avails. *Reynolds* v. *Cleveland,* 4 Cowen 282; *Griffith* v. *Buffum,* 7 Wash. 181; *Raymond* v. *Crown and Eagle Mills,* 2 Met. 319; *Everitt* v. *Chapman,* 6 Cowen 347.

The fact that Smith's note was taken for a large part of the claim does not change or lessen the liability of both the defendants upon the original account. The note was taken before the existence of the partnership was known to the plaintiffs, and at the time it was given there was no agreement that it should be received in discharge of the account. It also appears that it has never been paid. Upon such a state of facts it is entirely clear that the taking .of the note could form no defence to the action.

A promissory note is not a payment of a preëxisting debt, unless there be an agreement to that effect when the note is given. *Muldon* v. *Whittock,* 1 Cow. 290; *Brown* v. *Kewley,* 2 B. & P. 518; *Schermerhorn* v. *Loines,* 7 Johns.

311; *Reed* v. *White*, 5 Esp. 122; *Thompson* v. *Percival*, 5 B. & Ad. 925.

In *Johnson* v. *Cleaves*, 15 N. H. Rep. 332, it was held that to make a note payment of a preëxisting debt, there must either be an express agreement to receive it in payment, or there must be circumstances from which an agreement might be inferred.

Neither can the defendants' liability be affected by the presentation of the note to the commissioner on Smith's estate. Until the original debt should be paid, the plaintiffs had the right to pursue all the legal remedies within their power to secure it. The partnership property of the firm was liable in the first instance for the payment of the partnership debts, and the individual property for the individual debts. After the individual debts should be satisfied, the separate property would be liable for the partnership debts, should any remain unsatisfied by the partnership property. *Jarvis* v. *Brooks*, 3 Foster's Rep. 136. And as the law requires that all claims against an estate where a commissioner has been appointed, shall be presented to him at the times appointed, otherwise the claims shall be barred, except under certain circumstances, it was proper that the note or account, or both, should be presented to the commissioner for allowance, so that in the event of the partnership property being insufficient to satisfy the claims against the firm, the separate property might become liable, should it not be consumed by the individual debts.

This disposes of the questions which go to the foundation of the action. But there are one or two others raised by the case which we will briefly examine.

Bannister, the surviving defendant, was offered as a witness in chief, but excluded by the auditor. The ground for his exclusion is stated to be, that it appeared that Smith, the other defendant, who was dead, had made most of the purchases; that Frederick Smith, one of the plaintiffs, who had had most to do with directing the sales on the part of

the plaintiffs, was at the south on account of his health, and by reason of his absence the parties would not stand on equal grounds; and that from the circumstances of the case it appeared to the auditor that the witness was under more than ordinary inducements to testify in a particular manner.

We think this decision of the auditor was correct, and in accordance with our statute and the practice under it. The testimony of the party is admissible in the discretion of the auditor, subject to the supervision of the court. And a report will not be set aside either for the admission or rejection of the party, unless it shall appear that injustice has been done. If one party be ill and unable to testify at the hearing, a refusal by the auditor to permit the other party to testify, will be a proper exercise of his discretionary power, and will not be cause for recommitting or rejecting the report. These views are directly sustained by our cases, and fully justify the auditor in his decision. The plaintiff, Smith, who had transacted most of the business for the plaintiffs, was sick and unable to attend, and to have admitted Bannister to testify in his absence, would have been giving the defendants an advantage which our decisions do not warrant. *Fuller* v. *Little*, 7 N. H. Rep. 535; *Mann* v. *Locke*, 11 N. H. Rep. 246; *Lovering* v. *Lovering*, 13 N. H. Rep. 513.

An exception was taken to the evidence tending to show that the agent, Brown, had not authority to sell the goods, but merely to receive orders and transmit them to the plaintiffs; but, as the evidence is not reported, we cannot see that it was illegal, and the report cannot be set aside on that account.

Our conclusion, of course, is, that there must be judgment on the report for the amount found due by the auditor.